UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CHEMICAL TOXIN WORKING GROUP INC.** ) | | |
| **DBA HEALTHYLIVING FOUNDATION INC.**, ) | | |
| On behalf of themselves and all others ) | | |
| similarly situated, as defined herein, ) | | |
| 370 S. Doheny Dr. ) | | |
| Beverly Hills, CA 90211 ) | | |
| ) | | |
| *Plaintiff,* ) | | |
| ) | | |
| v. ) | Case No. **1:22-cv-01259** | |
| ) | | |
| **JOHNSON & JOHNSON**, ) | JURY TRIAL DEMANDED | |
| One Johnson & Johnson Plaza ) | | |
| New Brunswick, NJ 08933 ) | | |
| ) | | |
| ) | | |
| and ) | | |
| ) | | |
| **Johnson & Johnson Consumer Inc.** ) | | |
| One Johnson & Johnson Plaza ) | | |
| New Brunswick, NJ 08933 ) | | |
| ) | | |
| *Defendants.* ) | | |

**PLAINTIFF'S MOTION TO REMAND TO D.C. SUPERIOR COURT**

1

**Table of Contents**

I.   INTRODUCTION ................................................................................................................ 4

II.  ARGUMENT....................................................................................................................... 7

   a.   Plaintiff HLF disputes that the amount in controversy exceeds $5 million dollars............. 7

   b.   The aggregation of attorneys' fees is not appropriate in DCCPPA cases.......................... 15

   c.   The Defendants have not established the costs of attorneys' fees and expenses by a preponderance of the evidence............................................................................................... 16

III. CONCLUSION ................................................................................................................. 18

## Table of Authorities

**Cases**

*Beck v. Test Masters Educ. Servs.*, 73 F. Supp. 3d 12 (D.D.C. 2014) ........................................... 18

*Bldg. Materials Corp. of Am. v. Henkel Corp.*, No. 6:15-cv-548-Orl-22GJK, 2017 U.S. Dist. LEXIS 152111  (M.D. Fla. Apr. 17, 2017) ................................................................................. 7

*Breakman v. AOL LLC,* 545 F. Supp. 2d 96 (D.D.C. 2008) ..................................................... 15, 16

*Clean Label Project Found. v. Now Health Grp., Inc.*, No. 21-11 (JDB), 2021 U.S. Dist. LEXIS 125488 (D.D.C. July 6, 2021) ............................................................................................. 9, 13

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) ..................................... 9

*Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714 (D.C. 2003) ............................................ 18

*Dudley v. Eli Lilly & Co.*, 778 F.3d 909 (U.S. App. 11th Cir. 2014) ............................................ 13

*Fahey v. Godiva Chocolatier, Inc.*, No. 19-2128 (JDB), 2020 U.S. Dist. LEXIS 27073 (D.D.C. 2020) ........................................................................................................................................ 8

*In re InPhonic, Inc.*, 674 F. Supp. 2d 273 (D.D.C. 2009) ............................................................. 18

*Nat'l Consumers League v. General Mills*, Inc., 680 F. Supp. 2d 132 (D.D.C. 2010) .................. 16

*Nat'l Org. for Women v. Mutual of Omaha Ins. Co.*, 612 F. Supp. 100 (D.D.C. 1985) ................ 16

*Sloan v. Soul Circus, Inc.*, No. 15-01389 (RC), 2015 U.S. Dist. LEXIS 169565 (D.D.C. Dec. 18, 2015) ........................................................................................................................ 9, 13, 16, 17

*Srour v. Barnes,* 670 F. Supp. 18 (D.D.C. 1987) ......................................................................... 16

*Wexler v. United Air*, 496 F. Supp. 2d 150 (D.D.C. July 31, 2007) .................................. 9, 14, 15

*Wharf, Inc. v. D.C. Wharf Horizontal Reit Leaseholder LLC*, No. 15-cv-1198 (CKK), 2021 U.S. Dist. LEXIS 61169 (D.D.C. Mar. 30, 2021) ............................................................................ 12

*Williams v. First Gov't Mortg. & Inv. Corp.*, 225 F. 3d 738 (D.C. Cir. 2000) ............................. 18

*Your Girl Friday, LLC v. MGF Holdings, Inc.*, No. 06-0385 (ESH), 2006 U.S. Dist. LEXIS 20665 (D.D.C. 2006) ............................................................................................................ 17, 18

*Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293 (D.D.C. 2013) ................................. 16

**Statutes**

D.C. Code § 28-3901 *et seq* ............................................................................................................ 7

**Federal Statutes**

28 U.S.C. § 1332(d)(2) ............................................................................................................... 5, 7
28 U.S.C. § 1332(d)(2)(5)(B) ........................................................................................................ 13
28 U.S.C. § 1441(a) ........................................................................................................................ 7
28 U.S.C. § 1447(c) ........................................................................................................................ 5
28 U.S.C. §§ 1447(a) ...................................................................................................................... 5

**COMES NOW**, Plaintiff Chemical Toxin Working Group Inc. dba HealthyLivinG Foundation ("HLF" or "Plaintiff"), on behalf of themselves and all others similarly situated, and the general public, by and through their counsel, respectfully moves this Court to remand this case back to the D.C. Superior Court, and as grounds therefore states as follows:

## I.  INTRODUCTION

This case does not belong in federal court because there is no diversity or federal question jurisdiction through which this Honorable Court can assert subject matter jurisdiction.[1] Removal is not appropriate under the Class Action Fairness Act ("CAFA") as this action does not meet the federal jurisdictional requirements due to insufficient amount-in-controversy. *See* 28 U.S.C. § 1332(d)(2).

Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively the "Defendants"), market and sell baby cleansing products that are advertised as free-of-phthalates in Washington D.C. Plaintiff HLF tested four (4) No-Phthalate Products[2] at certified, independent analytical chemistry laboratories and discovered that these products are in fact contaminated with quantifiable levels of various types of phthalates. *See* Ex.1, Compl. ¶¶ 80-83. Yet, the Defendants' No-Phthalate Products prominently display, front and center, "no parabens, phthalates or dyes", or

---

[1] Plaintiff HLF's Motion to Remand is timely pursuant to 28 U.S.C. §§ 1447(a). Furthermore, this motion complies with the thirty (30) day deadline to file a motion to remand for any other reason. *See* 28 U.S.C. § 1447(c). Defendants' Notice of Removal was filed on May 6, 2022; thirty (30) days after removal was Sunday, June 5, 2022. Thus, the due date is Monday, June 6, 2022, the date the instant motion to remand has been filed.

[2] The baby cleansing products at issue are 1) Johnson & Johnson's Baby Soap Bar (3 oz); 2) Head-to-Toe Gentle Baby Cleansing Cloths (15 ct); 3) Baby Shampoo with Tear-Free Formula (27.1 fl. oz) & (33.8 fl. oz.); and 4) Head-to-Toe Gentle Tear Free Wash & Shampoo (27.1 fl. Oz) (collectively the "No-Phthalate Products").

other similar free-of-phthalate advertising on the product packaging. *See* Ex.1, Compl. ¶ 78 at Figures 1-4.

Defendants' online promotional materials assure consumers that the No-Phthalate Products are the "best for babies", "safest and gentlest care for your baby", and "help to support the overall well-being of your baby's skin." *Id*. at Figures 30, 33, and 35. Nationwide, to bolster Defendants' marketing campaign that Johnson & Johnson is trustworthy and "dedicated to all things gentle", Defendant advertised that the No-Phthalate Products were "reformulated with simpler, gentle formulas, free of parabens, sulfates, & phthalates." *Id*. at Figure 11. Defendants' online promotional materials further tout a rigorous "5-Step Safety Assessment Process" designed to ensure "quality" products with "safe" ingredients. *Id*. at Figures 31-32. Defendants represent that the process is "thorough" and assures that its quality control process safeguards consumers against products that fail Johnson & Johnson's testing standards. *Id*. The Defendants' phthalate-free marketing campaign for baby products became ubiquitous online, in stores, and on the products themselves, and explicitly showcases internal quality assurance and testing processes designed to capture consumer trust and to dominate sales. *Id*.

Contrary to Defendants' promises and assurances that the No-Phthalate Products undergo thorough assessments, are the "best for babies", and are free of phthalates, Plaintiff HLF commissioned independent laboratory testing through different ISO-17025 certified chemical analysis laboratories and discovered that the No-Phthalate Products contain a number of different phthalates[3], indicating that the Defendants' internal quality control testing for phthalate is

---

[3] Plaintiff's repeated laboratory testing of the No-Phthalates Products detected the presence of the following phthalates: di-(2-ethylhexyl) phthalate ("DEHP"), di-n-hexyl phthalate ("DHEXP"), benzyl butyl phthalate ("BBP"), dicyclohexyl phthalate ("DCHP"), and Dibutyl phthalate ("DBP"). *See* Ex.1, Compl. ¶¶ 80-83.

inadequate and ineffective; Defendants' free-of-phthalate, advertised promise is literally false. *Id*. at Figure 35 and ¶¶ 80-83. Plaintiff HLF brought this representative class action in D.C. Superior Court, pursuant to Superior Court Rule of Civil Procedure 23, against Defendants, on behalf of themselves and all others similarly situated, and the general public, concerning Defendants' violations of the District of Columbia Consumer Protection Procedures Act D.C. Code § 28-3901 *et seq* ("DCCPPA"). *See* Ex.1, Compl. District of Columbia Superior Court is where this case belongs.

Defendants incorrectly contend that this Court has original jurisdiction over this class action pursuant to the satisfaction of the CAFA requisites: minimal diversity[4]; over one hundred (100) putative class members; and an amount in controversy that exceeds five million dollar ($5,000,000 USD). *See* ECF 1, Defendants' Notice of Removal at 3-7; *see also*, 28 U.S.C. § 1441(a); *see also*, 28 U.S.C. § 1332(d)(2). This matter does not meet the threshold necessary for jurisdiction under CAFA and Defendants have failed to prove otherwise. *See* 28 U.S.C. § 1332(d)(2); *see also*, Ex.1, Compl. ¶ 12 (stating that "It is upon information and belief that the

---

[4] Defendant alleges that Johnson & Johnson and Johnson & Johnson Consumer Inc. ("JJCI") are both citizens of the state of New Jersey; however, discovery may reveal otherwise. *See* ECF 1, Defendant's Notice of Removal ¶ 10. Moreover, Defendant Johnson & Johnson's Corporate Disclosure Statement provides that it is a publicly held corporation organized under the laws of the State of Delaware. *See* ECF 2, Defendant Johnson & Johnson's Corporate Disclosure Statement. Plaintiff HLF reserves the right to challenge diversity based upon the citizenship of the parties. *See Bldg. Materials Corp. of Am. v. Henkel Corp.*, No. 6:15-cv-548-Orl-22GJK, 2017 U.S. Dist. LEXIS 152111, at *9-11 (M.D. Fla. Apr. 17, 2017) (awarding plaintiff attorney's fees and expenses for defendant's wrongful removal on the basis of diversity caused by defendant's failure to properly investigate its corporate citizenship. The defendant argued that the plaintiff could have discovered that defendant was incorporated in Delaware; however, the court emphasized that it was defendant's burden to establish federal jurisdiction.). JJCI is a subsidiary of Johnson & Johnson. *See* Ex.1, Compl. ¶24, n.13. Defendants claim that Defendant Johnson & Johnson does not produce or market the No-Phthalate Products, and thus is not a proper party defendant. *See* ECF 1, Defendant's Notice of Removal at 1, n.1. The parties have yet to engage in discovery, which may reveal the true nature of the production of the No-Phthalate Products and the responsibilities of the Defendants in such process.

amount in controversy does not meet the federal standard as the potential statutory damages fall below the five-million-dollar ($5,000,000) threshold."); *see also*, ECF 1, Defendants' Notice of Removal. Defendants' distortion of the amount-in-controversy for this DCCPPA matter relies on speculative extrapolations from the national sales trends and the U.S. Census data, and not the actual D.C. sales records of the No-Phthalate Products. *Id*. at ¶ 18; *see also*, Ex. E., Declaration of Kirsten Hurley in Support of Defendants' Notice of Removal ("Decl. of Hurley") ¶¶ 4-8.[5] Defendants' attestation as to the amount-in-controversy lacks substance, accuracy, and ignores the putative class definition, which is defined as follows:

> **Class:** All persons in the District of Columbia who, at any time from three (3) years preceding the date of the filing of this Complaint to the time a class is notified, purchased Defendant's No-Phthalate Products bearing free-of-phthalate claims for their own personal, family, or household use, and not for resale. Ex.1, Compl. ¶ 141.

This case should be remanded back to D.C. Superior Court as the Defendants have not met their burden establishing that the amount-in-controversy exceeds the $5 million dollar threshold. For the following reasons, Plaintiff HLF hereby asks that this case be remanded to D.C. Superior Court.

## II.     ARGUMENT

### a. Plaintiff HLF disputes that the amount in controversy exceeds $5 million dollars.

Plaintiff HLF disputes that the amount in controversy exceeds $5 million dollars, and thereby does not qualify for CAFA jurisdiction. Since Plaintiff HLF challenges Defendants'

---

[5] Please note that the Decl. of Hurley incorrectly asserts that Plaintiff HLF "seeks to enjoin their [the No-Phthalate Products] further use." *See* ECF 1, Defendants' Notice of Removal, Ex. E, Decl. of Hurley ¶ 2. Instead, Plaintiff HLF seeks an order requiring the Defendants to provide corrective advertising to the residents of Washington, D.C. that restores the consumers. *See* Ex.1, Compl. Prayer for Relief (E).

allegations, the Court is to determine by a preponderance of the evidence whether the amount in controversy exceeds the statutory requisites. See *Fahey v. Godiva Chocolatier, Inc.*, No. 19-2128 (JDB), 2020 U.S. Dist. LEXIS 27073, at *4-5 (D.D.C. 2020) (stating that if the plaintiff *does* challenge the defendant's allegation, then the district court is to determine by a preponderance of the evidence whether the amount in controversy exceeds the statutory requirement.")(emphasis added). The party claiming the existence of federal jurisdiction must submit proof in support to meet its burden, not merely assertions or speculations. *See Sloan v. Soul Circus, Inc.*, No. 15-01389 (RC), 2015 U.S. Dist. LEXIS 169565, at *16 (D.D.C. Dec. 18, 2015) (holding that in removal proceedings, the defendant bears the burden of establishing the amount in controversy by a preponderance of the evidence); *see also*, *Wexler v. United Air*, 496 F. Supp. 2d 150, 155 (D.D.C. July 31, 2007) (demonstrating that a removing party has a "substantial" burden in proving the amount-in-controversy under CAFA); *see also*, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88-89 (2014) (stating that a defendant's notice of removal need only include a plausible allegation as to the amount in controversy, *unless* the plaintiff contests, or the court questions, the defendant's allegations)(emphasis added); *and see also*, *Clean Label Project Found. v. Now Health Grp., Inc.*, No. 21-11 (JDB), 2021 U.S. Dist. LEXIS 125488, at *6-7 (D.D.C. July 6, 2021) (citing 28 U.S.C. § 1446(c)(2)(B) and *Dart Cherokee*, in the court's decision remanding a DCCPPA suit back to D.C. Superior Court, where the court found that the defendant's allegations that the amount-in-controversy reached $75,000 did not meet the preponderance of the evidence standard).

Under the preponderance of the evidence standard set forth in *Dart Cherokee*, the Defendants have failed to meet this substantial burden. *See Dart Cherokee*, 574 U.S. at 88-89 (stating that "If the plaintiff contests the defendant's allegation, §1446(c)(2)(B) instructs:

8

'[R]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold."); *and see also*, Wexler v. United Air, 496 F. Supp. 2d at 155. Even Defendants' own statements demonstrate how its computation of aggregated statutory damages is speculative, inaccurate, and inflated. *See* ECF 1, Defendant's Notice of Removal, ¶¶ 18-19, and Ex. E, Decl. of Hurley ¶ 6 (attesting that "Based on what I understand were [*sic*] the populations of the District of Columbia (670,050) and United States (331,893,745) in 2021-and assuming that sales of the relevant products in the District are proportional to sales nationwide-JJCI sells roughly 839 units of the disputed products in the District each month."). This methodology is inherently flawed because Ms. Hurley relies upon unverified assumptions that the sales nationwide and in D.C. are proportional. In support of the allegations that the amount-in-controversy meets the requisites of CAFA, Defendants then aggregate unsubstantiated totals of statutory damages. *Id*. at 18. Defendants attempt to demonstrate that sales for the No-Phthalate Products "roughly" average eight-hundred and thirty-nine (839) units per month in the District of Columbia. *See* ECF 1, Defendants' Notice of Removal, Ex. E, Decl. of Hurley ¶ 6. To arrive at this number, Defendants select, without a clear explanation as to why, the total nationwide sales of some unspecified products, to include Johnson's Baby Shampoo in October 2021 as 415,392 units. *Id*. at ¶ 5. The only justification that Defendants provide is that the number it had picked for the District of Columbia is surmised from the "typical monthly sales volume" for its sales of "these products" for the entire United States. *Id*. This is not enough.

In the well-pleaded class action complaint, Plaintiff HLF alleges that the Defendants deceptively labeled, marketed, and sold four (4) No-Phthalate Products. *See* Ex.1, Compl. ¶¶ 1, 78. Plaintiff HLF alleged with precision the exact name and size of the products at issue. *Id*.

Plaintiff HLF contends that only specific types and sizes of Defendants' No-Phthalate Products violate the DCCPPA. *Id*. The four (4) products at issue were identified by photographs, and both name and size in the Complaint. *Id*. This specification is intended to distinguish the four (4) products at issue as Defendants' baby products are sold in different sizes.[6] Besides, Defendants' cleansing products are generally labeled as a Johnson's Baby product but are actually different sub-types of baby shampoos[7], washes[8], soaps, or wipes[9] that are also marketed as containing no phthalates. The Declaration of Hurley does not include a breakdown of Washington D.C. sales, or even national sales, by product named in the Complaint. *See* ECF 1, Defendant's Notice of

---

[6] By way of example, Defendants' Baby Shampoo with Tear Free Formula No-Phthalate Product is also sold in sizes 1.7 and 13.6 fl. oz., where Plaintiff HLF alleges that only this product in sizes 27.1 fl. oz. and 33.8 fl. oz. were contaminated with phthalates. *See* Ex.1, Compl. ¶ 83; *and see also*, CVS, *Johnson's Baby Shampoo, Tear-Free with Gentle Formula*, https://www.cvs.com/shop/johnson-s-baby-shampoo-tear-free-with-gentle-formula-prodid-1070240 (last visited June 6, 2022). Additionally, Plaintiff HLF alleges that Defendants' No-Phthalate Product Head-to-Toe Gentle Tear Free Wash & Shampoo in the size 27.1 fl. oz. was contaminated with phthalates; this product is also sold in sizes 1.7, 3.4, and 16.9 fl. oz. *Id*.; *see also*, CVS, *Johnson's Head-to-Toe Tear Free Baby Body Wash & Shampoo*, https://www.cvs.com/shop/johnson-s-head-to-toe-tear-free-baby-body-wash-shampoo-prodid-1070478 (last visited June 6, 2022); *see also*, Walgreens, *Johnson's Baby Head-to-Toe Wash & Shampoo*, https://www.walgreens.com/store/c/johnson's-baby-head-to-toe-wash-%26-shampoo/ID=prod6383401-product (last visited June 6, 2022); *and see also*, Walgreens, *Johnson's Baby Head-To-Toe Gentle Tear-Free Baby Wash & Shampoo*, https://www.walgreens.com/store/c/johnson's-baby-head-to-toe-gentle-tear-free-baby-wash-%26-shampoo/ID=300400417-product (last visited June 6, 2022).

[7] *See* Johnson's Baby, *Clean & Fresh Shampoo & Body Wash*, https://www.johnsonsbaby.com/baby-products/johnsons-clean-fresh-shampoo-body-wash (last visited June 6, 2022)(displaying a subtype of Johnson's shampoo and body wash that is labeled as containing no phthalates. This product is not included in the No-Phthalate Products detailed the Complaint). *See* Ex.1, Compl. ¶ 1.

[8] *See* Johnson's Baby, *Baby Moisture Wash*, https://www.johnsonsbaby.com/baby-products/johnsons-baby-moisture-wash (last visited June 6, 2022)(displaying a Johnson's baby moisture wash that is labeled as containing no phthalates. This product is not included in the No-Phthalate Products detailed in the Complaint.) *See* Ex.1, Compl. ¶ 1.

[9] *See* Johnson's Baby, *Hand and Face Wipes*, https://www.johnsonsbaby.com/baby-products/johnsons-baby-hand-and-face-wipes (last visited June 6, 2022)(displaying a Johnson's hand and face wipes product that is labeled as being formulated without phthalates. This product is not included in the No-Phthalate Products detailed in the Complaint.) *See* Ex.1, Compl. ¶ 1.

Removal, Ex. E, Decl. of Hurley. It is unknown whether the Defendants have excluded sales of the products that do not conform to the exact types and sizes of the No-Phthalate Products detailed in the class action complaint. *See* Complaint ¶¶ 1, 78.

Defendants next cite the United States Census Bureau to offer population statistics for the U.S. and D.C. population for the year 2021, which were 331,893,745 and 670,050, respectively. *See* ECF 1, Defendants' Notice of Removal at 18.[10] Then, Defendants inexplicably conclude that "on average, in any given month, approximately 0.2% of all 'No-Phthalate' product sales occur in Washington, D.C." *Id*. Why did the Defendants designate **0.2%** of national sales of the Products per month to Washington D.C.? The Notice of Removal provides no clarity. Just because the population of D.C. is 0.2% of the entire United States, certainly does not prove that Defendant sold the same proportion of the four (4) No-Phthalate Products in question in D.C. during the relevant period. Unfortunately, the Declaration of Ms. Kirstin Hurley, Commercial Leader at JJCI responsible for leading marketing and sales efforts, offers neither further insight nor supporting evidence in her conclusory statements. *Id*. at Ex. E, Decl. of Hurley, at ¶ 1. Based upon "JJCI's business records and publicly available information", Ms. Hurley attests that the statutory damages "would be well in excess of $5,000,000". *Id*. at ¶¶ 3-8. This is an unjustified assumption as to the sales volume of the No-Phthalate Products in Washington, D.C. Ms. Hurley goes on to assume and falsely equivocate that "sales of the relevant products in the District are proportional to sales nationwide." *Id*. at ¶ 6. These assertions are highly speculative and unsupported by evidence. This

---

[10] Defendants state that "U.S. Census data is an appropriate subject of judicial notice"; however, this request for judicial notice is improper and irrelevant as these statistics have no bearing on the putative class size. "Judicial notice cannot be used to circumvent the rule against hearsay and thereby deprive a party of the right of cross-examination on a contested material issue of fact." *Wharf, Inc. v. D.C. Wharf Horizontal Reit Leaseholder LLC*, No. 15-cv-1198 (CKK), 2021 U.S. Dist. LEXIS 61169, at *23 (D.D.C. Mar. 30, 2021).

is especially true considering that Defendants do not contemplate the nuances of the Washington, D.C. population compared to other U.S. states. Washington, D.C. in demographics such as age, social-economic differences, race, birth-rate, employment, marital status, parental status, or most importantly, relevant purchasing data for Defendants' four (4) products at issue. The nation's capital is a district unique from other states in the U.S. in multiple respects.[11]

These types of speculative calculations have been repeatedly rejected by this court and other districts. *See Sloan,* 2015 U.S. Dist. LEXIS 169565, at *40-45 (rejecting the defendant's estimate of aggregated DCCPPA statutory claims because it failed to address the nuances of the putative class definition. Instead, the defendant defined the aggregated claims based on the number of circus ticket purchasers from D.C. in the three (3) year period set forth in the complaint); *see also*, *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 914-917 (U.S. App. 11th Cir. 2014) (determining that the removing defendant's amount-in-controversy estimates were purely speculative because it failed to identify a specific number of class members that corresponded with the putative class conditions. The defendant provided two affidavits from the company's Senior Director of U.S. Sales detailing how it calculated the amount in controversy; however, the court noted that the defendant "could have provided the district court with more information about the amount of compensation that was allegedly denied the class members, without conceding liability or being unduly burdened"); *and see also, CLP v. Now Health Grp., Inc.*, 2021 U.S. Dist. LEXIS 125488, at *6-8 (stating that "the Court will only consider values supported by evidence in the record and will not count claimed amounts based solely on unsupported assertions or speculation.").

---

[11] Data Commons, https://datacommons.org/place/geoId/11001?utm_medium=explore&mprop=age&popt=Person&hl=en (last visited June 5, 2022).

Not only does a removing defendant have to prove that the amount in controversy meets the jurisdictional requirements, but it also needs to prove that the putative class exceeds one hundred (100) members. *See* 28 U.S.C. § 1332(d)(2)(5)(B); *and see also*, *Sloan* at *10 (stating that "a litigant may establish § 1332(d) diversity jurisdiction over a class action by showing that more than one hundred class members exist and their aggregate claims put more than $5,000,000 in controversy."). Defendants have not established the size of the putative class. The only "evidence" Defendants' offer is population statistics for Washington, D.C. in 2021. *See* ECF 1, Defendants' Notice of Removal ¶ 14. This statistic is not tailored to the putative class definition and does not establish a precise class size. *See* Ex.1, Compl. ¶ 141. Although Plaintiff HLF stated that the putative class consists of at least hundreds, if not thousands of consumers, Defendants' reliance upon this statement in the complaint is not sufficient evidence to establish the amount-in-controversy. *See* Ex.1, Compl. ¶ 145; *and see also*, *See Wexler v. United Airlines*, 496 F. Supp. 2d at 155-157.

In *Wexler*, the U.S. District Court for the District of Columbia discussed the substantial burden that removing defendants must overcome to prove class size, and ultimately the amount-in-controversy. *Id*. The plaintiffs in *Wexler* brought a class action suit against the defendant United Airlines alleging tort claims and violations to the DCCPPA regarding cancelled flights. *Id*. at 151. United Airlines removed the action to federal court under CAFA; however, the court granted the plaintiffs' motion to remand because, although the typical amount of the average disgorgement claim was sufficiently established, the class size was not. *Id*. at 156. To justify removal, United Airlines relied on a statement in the plaintiffs' complaint that the putative class members were in the thousands. *Id*. The court found that the defendant's estimate was not "precise" and reasoned that:

13

> The class size is not at all clear, however. Plaintiff estimates the class members number in the "thousands." Compl. P 10. UAL [United Airlines] bears the burden of establishing jurisdiction, and facts necessary for a more precise estimate of the class size are uniquely within its knowledge. Despite this, UAL provides no evidence for the likely size of the class, and instead falls back on Plaintiff's estimate in the Complaint of "thousands" of class members. This reliance on Plaintiff's estimate fails to meet UAL's burden. Because the size of the class is very unclear, the issue should be resolved in favor of remand. *See Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328-29 (11th Cir. 2006); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). *Id*.

The Declaration of Kirsten Hurley, Defendant JJCI's Commercial Leader, does not provide sufficient evidence to justify the removal of this DCCPPA suit to federal court when it is Defendants' burden to prove this. *See* ECF 1, Defendants' Notice of Removal, Ex. E, Decl. of Hurley. Moreover, Plaintiff HLF clearly stated in the well-pleaded class action complaint that the amount-in-controversy does not meet federal standards since the potential statutory damages fall well below $5 million dollars. *See* Ex.1, Compl. ¶ 12; *and see also*, *Breakman v. AOL LLC,* 545 F. Supp. 2d 96, 102-108 (D.D.C. 2008) (holding that there is a strong presumption that the initiation of a case in state court means that the plaintiffs have not claimed an amount to qualify for federal jurisdiction). Defendants ignore the putative class definition, which restricts the class to members that purchased the No-Phthalate Products "for their own personal, family, or household use, and not for resale." *See* Ex.1, Compl. ¶ 141. The Notice of Removal nor the Declaration of Hurley distinguishes whether the nationwide sales figures represent personal or resale totals of the No-Phthalate Products. *See* ECF 1, Defendants' Notice of Removal, Ex.E, Decl. of Hurley. Taking the Notice of Removal and the attached affidavit on its face, it is not possible to ascertain what products are included and excluded in Defendants' representation of national sales, or whether those national sales numbers bear any relevance to potential statutory damages of the putative class as defined in the Complaint. *Id*.

b. **The aggregation of attorneys' fees is not appropriate in DCCPPA cases**

Defendants assert that the attorneys' fees sought by Plaintiff HLF count towards the amount-in-controversy when provided for by statute. *See* ECF 1, Defendants' Notice of Removal, ¶ 20. The aggregation of attorneys' fees is not appropriate in DCCPPA cases. *See Nat'l Consumers League v. General Mills*, Inc., 680 F. Supp. 2d 132, 141 (D.D.C. 2010) (granting the plaintiff non-profit organizations motion to remand, and explaining that the "aggregation of attorneys' fees is not appropriate in a CPPA case."); *see also*, Sloan at *31 (declining to aggregate the named plaintiff's attorneys' fees with that of the putative class members fees, which is not appropriate in DCCCPA suits); *and see also*, *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 301 (D.D.C. 2013) (declining to aggregate attorneys' fees to satisfy the $75,000 threshold in a DCCPPA action).

Although attorneys' fees may be part of the amount in controversy if provided for by statute, this Court has previously noted that "is not entirely comfortable with the premise that an action should be retained in federal court where satisfaction of the amount-in-controversy requirement depends upon a lump sum award of attorneys' fees", given its duty to "strictly constru[e] the scope of its removal jurisdiction." *See Breakman* at 100 and 107 ( "Numerous courts have held that a 'defendant's conjecture regarding the possible amount of fees is inadequate to support an assertion of diversity jurisdiction.'")(citations omitted); *see also*, *Zuckman*, 958 F. Supp. 2d at 301; *see also*, *General Mills* 680 F. Supp. 2d at 141 (holding that "it is the Court's view that allowing attorneys' fees to satisfy the amount of controversy could encourage defendants to remove cases improperly simply to increase plaintiffs' fees and costs and thereby support removal."); *see also*, *Nat'l Org. for Women v. Mutual of Omaha Ins. Co.*, 612 F. Supp. 100, 108-109 (D.D.C. 1985) (remanding a class action suit regarding high prices of health insurance policies

for women and rejecting the defendant's argument that removal was proper, in part, because the total of aggregated attorneys' fees would be sure to amount to over the jurisdictional amount of $10,000); *see also*, *Srour v. Barnes,* 670 F. Supp. 18, 22 (D.D.C. 1987) (dismissing a breach of contract suit for lack of diversity jurisdiction and addressing whether a plaintiff can meet the jurisdictional minimum amount-in-controversy through recovery of attorneys' fees. The court found that "jurisdictional principles militate against allowing attorney fees to satisfy section 1332's amount in controversy. Moreover, as a policy matter, allowing attorney fees to constitute the matter in controversy would hinge federal jurisdiction on the fee schedules of lawyers instead of the weight of the substantive issue before the court."); *and see also*, *Your Girl Friday, LLC v. MGF Holdings, Inc.*, No. 06-0385 (ESH), 2006 U.S. Dist. LEXIS 20665, at 5-9 (D.D.C. 2006) (declining to exercise removal jurisdiction, where the defendant argued that the requisite jurisdictional amount was met due to plaintiff's request for attorney's fees in a suit regarding the breach of a settlement agreement stemming from a trademark dispute).

    **c. The Defendants have not established the costs of attorneys' fees and expenses by a preponderance of the evidence.**

Defendants' arguments are flawed given that they have not established the class size and the amount-in-controversy by a preponderance of the evidence. *See Sloan* at *29-32. Defendants' attorneys' fees assertions are akin to the defendant's arguments in *Sloan*, where the defendant Soul Circus also did not provide the court with an estimate of the amount of attorneys' fees the plaintiff could have recovered. *Id*. at 30. Instead, the defendant merely alleged that ""it is abundantly clear that, if Sloan were to prevail, her attorneys' fee demand would likely be in the high ten of thousands of dollars.'" *Id*. The court found that the estimate was "'based on pure conjecture.'" *Id.* at *31 (quoting *Breakman* at 107). Unlike the circus, Defendants in the instant matter do not even provide

a vague estimate as to attorneys' fees in this case. *See* ECF 1, Defendants' Notice of Removal ¶ 20. Moreover, it is not enough for Defendants to merely cite to case law to demonstrate the potential costs of expenses and fees that could be awarded in this action in lieu of any evidence. *See* ECF 1, Defendants' Notice of Removal, ¶ 21; *and see also, Your Girl Friday, LLC*, No. 06-0385 (ESH), at *8-9 (concluding that "In light of plaintiff's $ 50,000.00 demand, defendant's speculative contention that plaintiff's reasonable attorneys' fees might exceed $ 25,000.00 is inadequate to establish the requisite amount in controversy under the diversity statute. . . . Removal, therefore, cannot be based on 28 U.S.C. § 1332."). [12] As such, Defendants' attorneys' fees analysis is speculative and unsupported by evidence.

---

[12] The cases that Defendants cite showing the amount of attorneys' fees awarded in various DCCPPA actions do not discuss whether aggregated attorneys' fees, or attorneys' fees, in these DCCPPA cases were removed under CAFA due to the inclusion of aggregated attorneys' fees. *See Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 717 (D.C. 2003) (awarding attorneys' fees, but not punitive damages, in a DCCPPA suit brought on behalf of a class of cable television subscribers regarding late payment fees. The court did not address whether attorney's fees were considered when analyzing the amount in controversy as judgment was determined in the Superior Court.); *see also*, *In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 276 (D.D.C. 2009) (granting attorneys' fees and expenses in a consolidated multidistrict class action suit, not in the context of justifying CAFA removal jurisdiction, that was settled before class certification. Unlike the instant matter, the claims in *In re InPhonic, Inc.* included violations to consumer projection statutes for other states.); *see also*, *Williams v. First Gov't Mortg. & Inv. Corp.*, 225 F. 3d 738, 743, 748 (D.C. Cir. 2000) (affirming the lower court's award of attorneys' fees to plaintiff in a in a DCCPPA suit regarding a home loan, not in the context of justifying CAFA removal jurisdiction, where the plaintiff alleged that the mortgagor took advantage of his inability to protect his interests or knowingly making him a loan that he could not repay); *and see also*, *Beck v. Test Masters Educ. Servs.*, 73 F. Supp. 3d 12, 16-20 (D.D.C. 2014) (determining the reasonableness of the plaintiffs' attorneys' fees in a DCCPPA suit, again not in the context of justifying CAFA removal jurisdiction).

### III.  CONCLUSION

Defendants impermissibly removed this case from D.C. Superior Court. Defendants ask the Court to accept speculative, inaccurate numbers as to the class size and statutory damages. Defendants proceed without any supporting evidence using fatally flawed methodologies in their calculations of statutory damages, and fail their burden of proof in attempt to meet the amount in controversy under CAFA. This Court simply does not have subject matter jurisdiction over this case.

**WHEREFORE,** Plaintiff HLF, on behalf of themselves and all others similarly situated, and the general public, requests that this action be remanded to the D.C. Superior Court.

### Request for Hearing

Plaintiff HLF requests the Court to grant oral argument on this motion.

Dated: June 6, 2022

Respectfully submitted,

/s/ Julie T. Oliver-Zhang
Julie Oliver-Zhang, *Esq*. (D.C. Bar No. 997183)
**Oliver-Zhang Law, PLLC**
810 New Hampshire Ave. NW
Washington, DC 20037
Phone: (202) 643-1110
Fax: (202) 643-1596
Email: julie@oliverzhanglaw.com

**Lead Counsel for Plaintiff HLF**

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2022, a copy of the foregoing was served via the court's electronic filing system on all counsel of record.

/s/ Julie T. Oliver-Zhang

Julie Oliver-Zhang, Esq.