# EXHIBIT 1

Filed
D.C. Superior Court
04/15/2022 22:28PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **CHEMICAL TOXIN WORKING GROUP INC.** ) **DBA HEALTHYLIVING FOUNDATION INC**., ) On behalf of themselves and all others ) similarly situated, as defined herein, ) 370 S. Doheny Dr. ) Beverly Hills, CA 90211 ) ) *Plaintiff*, ) ) v. ) ) **JOHNSON & JOHNSON**, ) One Johnson & Johnson Plaza ) New Brunswick, NJ 08933 ) ) Serve: Registered Agent ) One Johnson & Johnson Plaza ) New Brunswick, NJ 08933 ) ) and ) ) Johnson & Johnson Consumer Inc. ) One Johnson & Johnson Plaza ) New Brunswick, NJ 08933 ) ) Serve: Registered Agent ) C T Corporation System ) 1015 15th St. NW ) Suite 1000 ) Washington, DC 20005 ) *Defendants.* ) | Case No. _____ JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff, Chemical Toxin Working Group Inc. dba HealthyLivinG Foundation ("HLF" or "Plaintiff"), by and through their counsel, brings this representative class action against Defendant Johnson & Johnson ("Johnson & Johnson" and "Johnson & Johnson Consumer Inc." or collectively the "Defendant"), on behalf of themselves and all others similarly situated, and the

1

general public, concerning Defendant's violations of the District of Columbia Consumer Protection Procedures Act D.C. Code § 28-3901 *et seq* ("DC CPPA"). Plaintiff makes the following allegations on personal knowledge as to themselves and their own acts, and as to all other matters on information and belief, as follows:

## NATURE OF ACTION

1.    Plaintiff brings this proposed class action individually and on behalf of all other members of the class, ("Class" or "Class Members"), as defined herein, seeking damages and injunctive relief against Defendant Johnson & Johnson for the Defendant's deceptive labeling, marketing, and sale of the following baby cleansing products:

   **1.**    Johnson & Johnson's Baby Soap Bar (3 oz);
   **2.**    Head-to-Toe Gentle Baby Cleansing Cloths (15 ct);
   **3.**    Baby Shampoo with Tear-Free Formula (27.1 fl. oz) & (33.8 fl. oz.); and
   **4.**    Head-to-Toe Gentle Tear Free Wash & Shampoo (27.1 fl. Oz),

(collectively "No-Phthalate Products"), in the District of Columbia, that are marketed as free-of-phthalates when these products are in fact contaminated with quantifiable levels of various types of phthalates.[1]

2.    Johnson & Johnson's No-Phthalate Products prominently display, front and center, "no parabens, phthalates or dyes", or other similar free-of-phthalate advertising on the product packaging.[2]  Defendant's online promotional materials assure consumers that its No-Phthalate Products are the "best for babies"[3], "safest and gentlest care for your baby", and "help to support the overall well-being of your baby's skin."[4]  To bolster Defendant's marketing campaign that

---

[1] Discovery may demonstrate that additional Johnson & Johnson products are within the scope of this Complaint. Plaintiff reserves the right to amend this complaint to include additional infant products identified through the course of discovery.
[2] *See* Figures 1 – 4.
[3] *See* Figure 30.
[4] *See* Figure 33.

Johnson & Johnson is trustworthy and "dedicated to all things gentle", Johnson & Johnson's baby care products were advertised to have been "reformulated with simpler, gentle formulas, free of parabens, sulfates, & phthalates."[5]

3.      Johnson & Johnson's online promotional materials further tout a rigorous "5-Step Safety Assessment Process" designed to ensure "quality" products with "safe" ingredients.[6] Defendant represents that the process is "thorough" and assures that its quality control process safeguards consumers against products that fail Johnson & Johnson's testing standards. Johnson & Johnson further established its marketing campaign for baby products that showcases its internal quality control and testing process that includes: 1) vetting suppliers that provide raw materials; 2) assessing ingredients for impurities; 3) clinical evaluation and testing; 4) consumers real-life usage testing and temperature testing; and 5) ongoing evaluation.[7]

4.      Contrary to Defendant's promises and assurances that the No-Phthalate Products undergo thorough assessments, are the "best for babies",[8] and are free of phthalates, Plaintiff HLF commissioned independent laboratory testing through different ISO-17025 certified chemical analysis laboratories and discovered that the No-Phthalate Products contain a number of different phthalates, indicating that Johnson & Johnson's internal quality control testing for phthalate is inadequate and ineffective, and rendering its free-of-phthalate promise literally false.

---

[5] *See* Figure 11.
[6] *See* Figures 31-32 (stating that "[w]e're committed to quality and safety, which is why we've developed a thorough process to create our baby products. If a formula fails any step within the process, we go back to the drawing board. It's how we assure we are developing the most gentle baby products for the most delicate skin.").
[7] *Id.*
[8] *See* Figure 35 (stating that "Our Best for Baby® Standards When you bring your baby home with Johnson's®, you can be sure that our attention and dedication went into every bottle so we can offer you our safest and gentlest care for your baby.").

5.      Plaintiff's repeated laboratory testing of the No-Phthalates Products detected the presence of the following phthalates: di-(2-ethylhexyl) phthalate ("DEHP"), di-n-hexyl phthalate ("DHEXP"), benzyl butyl phthalate ("BBP"),  dicyclohexyl phthalate ("DCHP"), and Dibutyl phthalate ("DBP"),  which are classes of phthalates specifically banned by the U.S. Consumer Product Safety Commission ("CPSC") under federal law for use in making child care articles and children's toys that can be placed in a child's mouth, due to their known, harmful effects on male reproductive development.[9]

6.      Moreover, in 2012, The Federal Trade Commission created the Guides for the Use of Environmental Marketing Claims, codified under 16 CFR 260.9, and stated with regard to "Free-of claims" by marketers: "It is deceptive to misrepresent, directly or by implication, that a product, package, or service is free of, or does not contain or use, a substance. Such claims should be clearly and prominently qualified to the extent necessary to avoid deception."[10]

7.      Johnson & Johnson markets the No-Phthalate Products under a false quality-

_____

[9] *See* Section 108 of the Consumer Product Safety Improvement Act of 2008 (CPSIA), Pub. L. No. 110-314, 122 Stat. 3016 (codified at 15 U.S. Code § 2057c); *see also*, U.S. Consumer Product Safety Commission (CPSC), *Phthalates Business Guidance & Small Entity Compliance Guide* (Nov. 26, 2019), https://www.cpsc.gov/Business--Manufacturing/Business-Education/Business-Guidance/Phthalates-Information; *and see* CPSC, *CPSC Prohibits Certain Phthalates in Children's Toys and Child Care Products* (Oct. 20, 2017), https://www.cpsc.gov/Newsroom/News-Releases/2018/CPSC-Prohibits-Certain-Phthalates-in-Childrens-Toys-and-Child-Care-Products.  To be clear, the Johnson & Johnson's baby personal care products at issue are unregulated under federal law as they are neither children's toys nor qualify as child care articles under the CPSIA, and therefore Plaintiff's claims pose no federal question. However, the CPSIA prohibitions against exposing infants and young children to phthalates to prevent adverse health outcomes demonstrate that phthalate harms are well-established and recognized by government agencies concerned with consumer safety.
[10] 16 CFR 260.9 does not pose federal question nor preemption issues in this case.  The FTC states explicitly under 16 CFR 260.1(b): "These guides do not preempt federal, state, or local laws. Compliance with those laws, however, will not necessarily preclude Commission law enforcement action under the FTC Act."  The Guides "do not convey any rights on any person and do not operate to bind the FTC or the public."  16 CFR 260.1(a)

assurance product assessment claim and represents that the No-Phthalate Products contain zero phthalate when the Products were found to contain various harmful phthalates, all of which indicate that the Defendant's testing process is in fact inadequate, and that its misleading representations and omissions are likely to deceive reasonable consumers, thereby violating the DC CPPA. *See* DC Code §28-3901, *et seq.*

8.    The Plaintiff seeks an injunction that will put an end to Johnson & Johnson's deceptive marketing and advertising of the No-Phthalate Products.  Plaintiff HLF also seek to recover the full monetary relief available under the law to rectify the injuries caused by Johnson & Johnson's unlawful practices.

## JURISDICTION

9.    This Court has personal jurisdiction over the parties in this case. Plaintiffs, by filing this Class Action Complaint, consent to this Court having personal jurisdiction over them and this matter.

10.    This Court has personal jurisdiction over Defendant Johnson & Johnson pursuant to D.C. Code 13-423. Defendant has sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this Court over them due to the fact, *inter alia*, that Defendant is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in, the District of Columbia, or otherwise purposefully avails itself to the laws of the District of Columbia through its marketing and sales of the No-Phthalate Products in the District of Columbia.

11.    This Court has subject matter jurisdiction over this action pursuant to D.C. Code 28-3905(k)(1)(B), (k)(1)(C), (k)(1)(D)(i), and (k)(2) ("Any claim under this chapter shall be brought in the Superior Court of the District of Columbia . . .").

12.     It is upon information and belief that the amount in controversy does not meet the federal standard as the potential statutory damages fall below the five-million-dollar ($5,000,000) threshold.

## PARTIES

A.  **Plaintiff HealthyLivinG Foundation Inc.:**

13.     Plaintiff Chemical Toxin Working Group Inc. dba HealthyLivinG Foundation Inc. ("HLF"), a publisher of Healthy LivinG Magazine, is a section 501(c)(3) non-profit public interest organization whose mission is to educate the public and enable consumers to make informed, healthy shopping choices. HLF performs its work throughout the United States, including the District of Columbia.

14.     HLF is dedicated to the promotion of human health, environmental safety, and improvement of worker and consumer safety. Plaintiff HLF is committed to reducing chemical toxins in consumer products that pose a threat to the health of fetuses, infants, children, pregnant women, and women of childbearing age.

15.     HLF acts in the interest of consumers with its goal to bring truth and transparency to consumer product marketing, advertising, and ingredients. HLF advances its objective to promote consumers' interests through a variety of strategies, including, but not limited to, advocacy, campaigns, lawsuits, outreach efforts, research, consumer education, broadcast, publications, Congressional expert testimony, advisory on consumer product safety-related legislation, serve as consumer watchdog, and by commissioning state-of-the-art laboratory testing to identify chemical toxins and pesticides in foods and consumer products.

16.     For years, HLF has provided consumers with science-based health, nutrition, and

parenting resources. Plaintiff HLF provides its readers with national health news that is instrumental to health-conscious consumers seeking resources regarding contaminants to be avoided in consumer products, nutrition, family and parenting care, and other healthy lifestyle topics.

17.    In line with its mission, HLF has an interest in food label truth and transparency and consumers' rights to know what is in the products they purchase. To that end, HLF works with scientific experts, doctors, and educates consumers by presenting unbiased science in a straightforward and useful medium to the public, thus allowing consumers to make data-based decisions.

18.    Plaintiff HLF has diverted resources away from its work of educating consumers about healthy shopping choices to bring this DC CPPA action against the Defendant Johnson & Johnson. This diversion has prevented HLF from allocating resources to other projects that advance human health, environmental safety, public awareness, and improvement of worker and consumer safety.

19.    Plaintiff HLF could have avoided these expenditures and drain on resources if Defendants had not engaged in a promotional campaign that misleads consumers in the District of Columbia regarding the ingredients, quality, and testing of its No-Phthalate Products. As such, Johnson & Johnson's misrepresentations have harmed HLF's mission and goals.

20.    Plaintiff HLF purchased the Johnson & Johnson No-Phthalate Products in the District of Columbia in order to test and evaluate their claims of phthalate-free marketing.[11]

---

[11] Plaintiff HLF purchased the No-Phthalate Products through Defendant Johnson & Johnson's authorized retailers.

21.     It is upon information and belief that Johnson & Johnson has caused harm to the Plaintiff and others similarly situated in the District of Columbia.

22.     Plaintiff HLF is acting on behalf of the general public as private attorney general pursuant to D.C. Code §28-3905(k)(1)(C)-(D) and on behalf of others similarly situated.

23.     HLF is a non-profit organization pursuant to D.C. Code §28-3901(a)(14) and a public interest organization pursuant to D.C. §28-3901(a)(15). Plaintiff is a longstanding advocate of the rights of consumers for more than two decades, including but not limited to consumers in the District of Columbia, for truthful labeling and marketing to ensure consumer health, particularly infant and children's health and wellness.

**B.   <u>Defendant Johnson & Johnson:</u>**

24.     Johnson & Johnson is a major producer of hygiene and baby care products.[12] In 2021, the Defendant reported three hundred and seventy-eight million dollars ($378,000,000) in baby care product sales in the U.S. and three hundred and seventy-six million dollars ($376,000,000) in baby care product sales in the U.S. in 2020.[13]

25.     At all times herein Johnson & Johnson was a New Jersey-based corporation that maintains its principal place of business and headquarters at Johnson & Johnson WHQ 1 Johnson and Johnson Plaza, New Brunswick, NJ 08933.

---

[12] Johnson & Johnson, *9 Ways Johnson & Johnson Has Revolutionized Baby Care* (May 16, 2018), https://www.jnj.com/innovation/9-ways-johnson-johnson-has-revolutionized-baby-care (stating that "Millions. That's how many babies around the globe have benefited from the groundbreaking, science-based products that Johnson & Johnson has created since launching its iconic line of baby products in 1894.").
[13] U.S Securities and Exchange Commission, *Annual Report Pursuant to Section 13 of the Securities Exchange Act of 1934* (Feb. 17, 2022), https://johnsonandjohnson.gcs-web.com/static-files/462a9aaa-18e1-439a-a62a-7b297a9fa68a.

26.     At all times herein Johnson & Johnson Consumer Inc. was a New Jersey-based corporation that maintains its principal place of business and headquarters at Johnson & Johnson WHQ 1 Johnson and Johnson Plaza, New Brunswick, NJ 08933.

27.     Johnson & Johnson markets and distributes the No-Phthalate Products online and in retail stores in the District of Columbia and throughout the United States.

## OVERVIEW OF HARMFUL PHTHALATE-EXPOSURE IN CHILDREN

28.     Phthalates are synthetic chemical compounds known as plasticizers used in the manufacture of plastics or used as dissolving agents. They are often utilized to make packaging, medical tubing, detergents, automotive parts, and cosmetics, among other products.[14]

29.     Scientific and clinical studies reveal that prenatal and early-life exposure to some types of phthalates is associated with health and developmental harm, such as reproductive harm[15], reduced psychomotor skills[16], breathing and skin conditions[17], neurodevelopmental problems such

---

[14] Cleveland Clinic, *What Are 'Hormone-Disrupting Chemicals'?*, Diabetes & Endocrinology (Mar. 24, 2020), https://health.clevelandclinic.org/what-are-hormone-disrupting-chemicals/ [hereinafter *What Are 'Hormone-Disrupting Chemicals'?*]; *see also*, Karen Feldscher, *Why Phthalates Should be Restricted or Banned from Consumer Products*, Harvard School of Public Health, https://www.hsph.harvard.edu/news/features/the-big-3-why-phthalates-should-be-restricted-or-banned-from-consumer-products/ (last visited Apr. 11, 2022); *and see*, Endocrine Society, *Plastics, EDCs & Health: Authoritative Guide*, Endocrine-Disrupting Chemicals (Dec. 10, 2020), https://www.endocrine.org/topics/edc/plastics-edcs-and-health#1.

[15] Harvard, *Exposure to Phthalates May Raise Risk of Pregnancy Loss*, Gestational Diabetes, News (Nov. 18, 2016), https://www.hsph.harvard.edu/news/features/phthalates-exposure-pregnancy-loss-gestational-diabetes/.

[16] Xi Qian et al., *Prenatal Exposure to Phthalates and Neurocognitive Development in Children at Two Years of Age*, 131 Env't. Int'l. 105023, 105027-29 (2019) (investigating the association between children's neurocognitive development and prenatal phthalate exposure. The study found a correlation between exposure to certain phthalates and decreased psychomotor development in children and potential sex-specific associations).

[17] Carl-Gustaf Bornehag et al., *The Association between Asthma and Allergic Symptoms in Children and Phthalates in House Dust: A Nested Case-Control Study*, 112 Env't. Health Perspect. 1393, 1395-1397 (2004)(finding associations between dust concentrations of specific

as Attention-deficit/hyperactivity disorder ("ADHD")[18], lower IQ scores[19], and is associated with

increased risks of cancer[20] and premature death.[21]

30.    Phthalate exposure at any stage of development may be detrimental to the health

and development of young children.[22]

---

phthalates and asthma, rhinitis, and eczema in Swedish children); *and see,* Lydiane Agier  et al.,
*Early-life Exposome and Lung Function in Children in Europe: An Analysis of Data from the
Longitudinal, Population-based HELIX Cohort,* 3 Lancet Planet Health 81, 82 (2019)
(uncovering in a 2019 study of European mothers and children that phthalate exposure before
and shortly after birth is associated with reduced lung function in children).
[18] Jessica R. Shoaff et al., *Association of Exposure to Endocrine-Disrupting Chemicals During
Adolescence With Attention-Deficit/Hyperactivity Disorder-Related Behaviors,* JAMA Netw.
Open, Aug. 28, 2020, at 1, 1-14 (discovering that exposure to some phthalates was associated
with an increased risk of ADHD related behaviors in adolescents in Massachusetts).
[19] Nan Li et al., *Identifying Periods of Susceptibility to the Impact of Phthalates on Children's
Cognitive Abilities,* Env't Rsch., May 2019, at 1, 1-3 (analyzing data from a cohort of women in
Ohio and following up with their children to identify periods of heightened susceptibility to
phthalates during various stages of gestation, infancy, and childhood, and explaining the adverse
impacts of phthalates on children's cognitive abilities) [hereinafter *Identifying Periods of
Susceptibility to the Impact of Phthalates on Children's Cognitive Abilities*]; *and see,* Soo-Churl
Cho et al, *Relationship Between Environmental Phthalate Exposure and the Intelligence of
School-Age Children,* 118 Env't Health Perspect., 1027, 1030 (2010) (investigating the
relationship between phthalate exposure and children's IQ scores and finding an inverse
association between IQ and phthalates levels in children's urine) [hereinafter *Relationship
Between Environmental Phthalate Exposure and the Intelligence of School-Age Children*].
[20] In a recent February 2022 study, researchers found that exposure to any kind of phthalate
during childhood is connected with a 20% higher incidence risk for any cancer in childhood. *See*
Ketura Persellin, *Pervasive phthalates: New Study Links Child Exposure to Cancer,* EWG (Mar.
24, 2022), https://www.ewg.org/news-insights/news/2022/03/pervasive-phthalates-new-study-
links-child-exposure-cancer [hereinafter *Pervasive phthalates: New Study Links Child Exposure
to Cancer*].
[21] Leonardo Trasande et al., *Phthalates and Attributable Mortality: A Population-based
Longitudinal Cohort Study and Cost Analysis,* Env't Pollution, 2022, at 1, 2, 6-7 (studying a
national representative sample of adults over forty (40) years of age and concluding that
phthalate exposure was associated with all-cause and cardiovascular mortality) [hereinafter
*Phthalates and Attributable Mortality*].
[22] Laura Lucaccioni et al., *Perinatal Exposure to Phthalates: From Endocrine to
Neurodevelopment Effects,* Int'l J. Mol. Sci., Apr. 14, 2021, at 1, 1-16 (reviewing studies that
researched the impact of early life exposure to phthalates on the neurodevelopment of children.
The researchers stated that "[P]lenty of evidence suggests the impact of phthalates on the
neuroendocrine system development and function."); *and see,* Joseph M. Braun et al., *Phthalate*

31.     Children can be exposed to phthalates from personal care products such as baby lotions, creams, and powders through skin absorption.[23] Moreover, children are at a high risk of exposure to phthalates particularly due to their tendency to put objects in their mouths and are prone to adverse effects from exposure.[24]

32.     States such as New York, California, and Vermont have prohibited the manufacture, distribution, and sale of toys and child care products containing phthalates.[25]

33.     Since 1999, the European Union has banned the use of certain phthalates in baby toys and baby care products suspected of causing liver and kidney damage and testicular problems.[26]

34.     California's Proposition 65, or the Safe Drinking Water and Toxic Enforcement Act of 1986, requires businesses to provide warnings to Californians regarding exposure to chemicals that cause, cancer, birth defects or other reproductive harm – including phthalates.[27]

---

*Exposure and Children's Health*, Curr. Opin. Pediatr., Apr. 2013, at 1, 1-7 (discussing that worldwide studies show that phthalate exposure to children, at various stages of development, adversely impacts physical growth, neurodevelopment, genital and pubertal development, and the development of allergic diseases).

[23] City and County of San Francisco Family and Children Services, *Phthalates Exposure How to Reduce Risks to Your Family*, K.I.D.S., https://foster-sf.org/wp-content/uploads/2021/06/July-August-2021_English.pdf (last visited Apr. 4, 2022) (outlining how adults and children are exposed to phthalates, including absorption through the skin).

[24] Victoria M. Pak et al., *Risks of Phthalate Exposure Among the General Population Implications for Occupational Health Nurses*, 55 Am. Assoc. of Occupational Health Nurses, 12, 12-13 (2007) (evaluating the sources, threats, and potential risks of phthalate exposures and implications for occupational health nurses) [hereinafter *Risks of Phthalate Exposure*].

[25] Safer States, *BPA, Phthalates, and Chemicals Used in Plastic*, Chemicals in Plastic, https://www.saferstates.org/toxic-chemicals/chemicals-in-plastic/ (last visited Apr. 5, 2022).

[26] US National Library of Medicine, National Institute of Health, *EU Bans Baby Toys Containing Phthalates*, 319(7224) BMJ 1522, 1522 (1999).

[27] CA.GOV Proposition 65, *Fact Sheets: Phthalates*, https://www.p65warnings.ca.gov/fact-sheets/phthalates (last visited Apr. 13, 2022) [hereinafter *Fact Sheets: Phthalates*]; *and see*, Cal. Health & Safety Code ("HSC") §§108937(a)-(b), 25249.6.

35.    The California Office of Environmental Health Hazard Assessment has determined that butyl benzyl phthalate ("BBP") may cause reproductive toxicity.[28] California law further prohibits the manufacture, sale, or distribution of children's toys and childcare articles that contain more than 0.1% of phthalates – including BBP, Di-n-butyl phthalate ("DBP"), Di-n-hexyl phthalate ("DnHP"), and Di-isodecyl phthalate ("DIDP").[29]

36.    Likewise, in the Consumer Product Safety Improvement Act of 2008, the U.S. Consumer Product Safety Commission prohibited the use of some phthalates in toys and childcare items at concentrations greater than 0.1 percent – including DEHP, DBP, and BBP.[30]

37.    Despite attempts to set "safe" thresholds for phthalate exposure, a recent study suggests that current regulations of some phthalates may not be adequate and should be reassessed.[31] In fact, a 2021 longitudinal study published in the scientific peer-reviewed journal, *Environmental Pollution*, alarmingly uncovered that phthalate exposure is associated with overall

---

[28]California Office of Environmental Health Hazard Assessment, Notice of Intent to List Chemicals: Butyl benzyl phthalate ("BBP"), Di-n-butyl phthalate ("DBP"), Di-n-hexyl phthalate ("DnHP"), Di-isodecyl phthalate ("DIDP"), Proposition 65 (Mar. 4, 2005), https://oehha.ca.gov/proposition-65/crnr/notice-intent-list-chemicals-butyl-benzyl-phthalate-bbp-di-n-butyl-phthalate-dbp.

[29] *Fact Sheets: Phthalates.*

[30] U.S. Consumer Product Safety Commission, *Phthalates Business Guidance & Small Entity Compliance Guide*, (Nov. 26, 2019), https://www.cpsc.gov/Business--Manufacturing/Business-Education/Business-Guidance/Phthalates-Information#:~:text=In%20the%20Consumer%20Product%20Safety,benzyl%20butyl%20phthalate%20(BBP). Please note that HLF does not invoke any federal laws or regulations in this action. Any citations to federal agency statements or rules are referenced only to demonstrate that it is well-documented that phthalates are harmful from credible, government sources.

[31] Maricel V. Maffini et al., *Role of Epidemiology in Risk Assessment: A Case Study of Five Ortho-phthalates*, Env't Health, 2021 at 1, 11-14 (stating that for certain phthalates "current RfDs (reference doses) estimated based on male reproductive toxicity may not be sufficiently protective of other health effects. Thus, a new approach is needed where post-market exposures, epidemiological and clinical data are systematically reviewed to ensure adequate health protection.").

increased mortality rates, including deaths from cancer and cardiovascular diseases.[32]

**A. Phthalates are Endocrine Disrupting Chemicals that Cause Reproductive Harms:**

38.     Phthalates are known endocrine disruptors, which are chemicals that interfere with naturally occurring hormones in the body,[33] and have been linked to reproductive harm.[34]

39.     The endocrine (hormone) system is a complex network of glands and organs that use hormones to control the body's metabolism, energy, reproduction, growth, and development.[35]

40.     Hormone balance is necessary to ensure that the endocrine system is functioning properly.[36]

41.     Endocrine disrupting chemicals, such as phthalates, are associated with development, reproductive, and various other health problems like hormone-related cancers.[37]

42.     Children and women of childbearing age are at high-risk for exposure to phthalates and are prone to adverse effects from this endocrine disrupting exposure.[38]

43.     Studies have shown that phthalates are associated with serious health effects at

---

[32]*See Phthalates and Attributable Mortality,* at 1, 2, 6-7.
[33] *See What Are 'Hormone-Disrupting Chemicals'?.*
[34] *Id.*
[35] Johns Hopkins Medicine, *Anatomy of the Endocrine System,* Wellness and Prevention, https://www.hopkinsmedicine.org/health/wellness-and-prevention/anatomy-of-the-endocrine-system#:~:text=The%20endocrine%20system%20is%20a,Hypothalamus (last visited Apr. 4, 2022).
[36] Robert M. Sargis, *About the Endocrine System,* Endocrine Web (May 18, 2021), https://www.endocrineweb.com/endocrinology/about-endocrine-system (stating that "The endocrine glands must release the correct amount of hormones (if they release too much or too little, it is known as hormone imbalance.").
[37] *See What Are 'Hormone-Disrupting Chemicals'?.*
[38] *Risk of Phthalate Exposure,* at 12, 14.

lower doses, particularly in cases of chronic low-dose exposure.[39]

44.    Women who use every day personal care products, such as deodorant, anti-aging cream, perfume, and body lotion, display higher levels of various phthalates in their urine compared to nonusers.[40]

45.    For women, exposure to phthalates can lead to health and reproduction complications, such as loss of pregnancy[41], gestational diabetes[42], postpartum depression[43], and

---

[39] Paul Brown et al., *Phthalates and Children's Products*, Nat'l Ctr. for Health Rsch. (2022) at 1, https://www.center4research.org/phthalates-childrens-products/ ("Usually, we assume that the higher the dose or exposure, the greater the harm, but endocrine disruptors play by different rules."); *see also*, The University of Vermont, *Study: Exposure to Phthalates – the 'Everywhere Chemical' – May Increase Children's Cancer Risk* (Mar. 16, 2022), at 2, https://www.newswise.com/articles/study-exposure-to-phthalates-the-everywhere-chemical-may-increase-children-s-cancer-risk ("age of exposure, as well as chronic low dose exposures, are significant risk factors for adverse health effects").

[40] Michelle Romero-Franco et al., *Personal Care Product Use and Urinary Levels of Phthalate Metabolites in Mexican Women*, 37 Env't Int'l 867, 867-871 (2011) (finding that in a study of women in Mexico, the use of personal care products, such as body lotion, deodorant, anti-aging facial cream, and perfume was correlated with high concentrations of some phthalates in their urine. The results suggest "that the use of some personal care products contributes to phthalate body burden that deserves attention due to its potential health impact."); *and see*, Lauren E. Parlett et al., *Women's Exposure to Phthalates in Relation to Use of Personal Care Products*, 23 J. Expo. Sci. Env't. Epidemiol. 197, 200 (2013) (finding that use of personal care products was positively associated with the presence of phthalate concentrations in urine samples of recently pregnant women).

[41] Carmen Messerlian et al., *Urinary Concentrations of Phthalate Metabolites and Pregnancy Loss Among Women Conceiving with Medically Assisted Reproduction*, 27 Epidemiol. 879,883 (2016) (examining pregnancy loss among women with medically assisted pregnancies and demonstrated an association between phthalate exposure and biochemical and total pregnancy loss); *and see*, H. Yi, et al., *A Pilot Study on Association between Phthalate Exposure and Missed Miscarriage*, 20 Eur. Rev. Med. Pharmacol. Sci. 1894, 1900 (2016) (reporting that, in a study of women in China, exposure to some phthalates was associated with risk of miscarriage).

[42] TM James-Todd et al., *Pregnancy Urinary Phthalate Metabolite Concentrations and Gestational Diabetes Risk Factors*, Environ. Int., Nov. 2016, at 1, 1-2.

[43] Melanie H. Jacobson et al., *Prenatal Exposure to Bisphenols and Phthalates and Postpartum Depression: The Role of Neurosteroid Hormone Disruption*, 106 J. Clin. Endo. & Metabolism 1887,1888, 1894 (2021) (discovering that some phthalates may influence hormonal shifts during pregnancy as well as contribute to postpartum depression).

endometriosis[44] – a disease that provokes chronic pelvic pain and is a common cause of infertility.

46.     Phthalates also disrupt the production of androgen (testosterone), a hormone critical in male development and relevant to female development.[45]

47.     Phthalate exposure is correlated with poor semen quality in men.[46]

48.     Studies have shown concerning associations regarding the physical development of children, specifically penile size. Alarmingly, studies of boys in the U.S.[47], Japan[48], and Mexico[49] have revealed that prenatal exposure to phthalates is linked to smaller penile size.

**B. Phthalates are Harmful to Children's Neurodevelopment:**

49.     Infancy, the period of time between birth and the acquisition of language[50], is a

---

[44] Sadia Nazir et al., *Women Diagnosed with Endometriosis Show High Serum Levels of Diethyl Hexyl Phthalate*, 11 J. Hum. Reprod. Sci. 131, 135 (2018) (stating that test results show a positive association between phthalates and endometriosis); *and see,* Alessandro Conforti et al., *Unravelling the Link Between Phthalate Exposure and Endometriosis in Humans: A Systematic Review and Meta-Analysis of the Literature*, 38 J. Assist. Reprod. and Genet. 2543, 2551 (2021) (finding that studies show that women with endometriosis had high levels of some phthalates. "Growing evidence implicates phthalate exposure in both the development of endometriosis and its severity.").

[45] The Endocrine Society, *Common EDCs and Where They Are Found*, Common EDCs, https://www.endocrine.org/topics/edc/what-edcs-are/common-edcs (last visited Apr. 5, 2022).

[46] Yi-Xin Wang et al., *Phthalate Exposure and Human Semen Quality: Results from an Infertility Clinic in China*, Environ. Res., 2015, at 1, 6,8 (concluding that a study of Chinese men suggests that some phthalates may contribute to decline in semen quality).

[47] Shanna H. Swan et al., *Decrease in Anogenital Distance among Male Infants with Prenatal Phthalate Exposure*, 113 Env't Health Perspect. 1056, 1059-1061 (2005).

[48] Y. Suzuki et al., *Foetal Exposure to Phthalate Esters and Anogenital Distance in Male Newborns*, 35 Int'l J. Androl. 236, 243 (2011).

[49] L. P. Bustamante-Montes et al., *Prenatal Exposure to Phthalates is Associated with Decreased Anogenital Distance and Penile Size in Male Newborns*, J. Dev. Orig. Health Dis., Aug. 2013, at 1, 1, 5-6 (discovering a correlation between prenatal exposure to phthalates and penile size in Mexican male newborns).

[50] Britannica, *Infancy,* Anatomy & Physiology, https://www.britannica.com/science/infancy (last visited Apr. 5, 2022).

critical period of neurodevelopment – the development of the brain.

50.    "Critical periods" are so-named because disruption of development during those phases is often irreversible, placing incredible importance on ensuring developing brains are left unobstructed during these periods.

51.    During the critical period taking place during infancy, essential neurodevelopment occurs, including aspects of neurogenesis – the formation of neurons ("brain cells") and the formation of the complex interconnection of neurons that give rise to the human experience (synaptogenesis).[51]

52.    The first years of a child's life can have a lasting effect on neurodevelopment.[52]

53.    Developing brains are particularly vulnerable to toxins, including phthalates even at low doses, as the brain is not fully formed and is more permeable to toxins compared to the mature brain.[53]

54.    Phthalate exposure impacts young children's neurodevelopment by disrupting thyroid function, reducing gonadal hormone levels, or by altering fatty acid concentrations in the

---

[51] P.R. Huttenlocher & A.S. Dabholkar, *Regional Differences in Synaptogenesis in Human Cerebral Cortex*, 387 J. Comp. Neurol. 167, 167-178 (1997).
[52] The Urban Child Institute, *Baby's Brain Begins Now: Conception to Age 3*, http://www.urbanchildinstitute.org/why-0-3/baby-and-brain (last visited Apr. 4, 2022) (stating that "Child development specialists have produced decades of research showing that the environment of a child's earliest years can have effects that last a lifetime.").
[53] Bruce P. Lanphear, *The Impact of Toxins on the Developing Brain*, 36 Ann. Rev. Pub. Health. 211, 213, 223 (2015) (examining the impact of toxins on developing brains and concluding that low levels of exposure to toxins can result in "substantial disease and disability.").

brain.[54]

55.    A study published in the peer-reviewed journal, *Environmental Research*, concluded that postnatal exposure to some phthalates is associated with low motor skills among young boys. This is concerning as motor functions are integral to child development.[55]

56.    A study published in *Environmental Research* uncovered that increased phthalate exposure is inversely related to lower Intelligence Quotient ("IQ") scores in children.[56]

**OVERVIEW OF DEFENDANT'S DECEPTIVE PHTHALATE-FREE MARKETING**

57.    Consumers seek to avoid purchasing products containing harmful contaminants, specifically phthalates.[57]

58.    Parents care about protecting their children from poor brain development, reproductive development, IQ, future fertility, cancer, and other health problems associated with phthalate exposure.  Thus, parents purchase infant products, particularly infant cleansing products,

---

[54] *Identifying Periods of Susceptibility to the Impact of Phthalates on Children's Cognitive Abilities,* at 1, 1-3; *and see*, *Relationship Between Environmental Phthalate Exposure and the Intelligence of School-Age Children*, at 1027,1030.

[55] Arin A. Balalian et al., *Prenatal and Childhood Exposure to Phthalates and Motor Skills at Age 11 Years*, Env't Rsch., Apr. 2019, at 1, 1, 13 (warning that "[s]ince children utilize motor skills to navigate their physical and social environment, our findings suggest the need to reduce phthalate exposure.").

[56] *Relationship Between Environmental Phthalate Exposure and the Intelligence of School-Age Children* at 1030 (measuring phthalate metabolites in elementary school children's urine and finding a significant inverse relationship between the concentration of the phthalate metabolites and the children's IQ scores).

[57] In a survey of shoppers, 30.1% of consumers prioritized buying baby care products that were made of safer or healthier materials and 55.7% of consumers recognize and avoid phthalates. *See* Made Safe, *What Shoppers Want Survey, Copy of What Shoppers Want: The Conscious Consumer Survey*, https://www.madesafe.org/wp-content/uploads/2017/07/SCHF-MADE-SAFE-Survey-Data.pdf  (last visited Mar. 7, 2022) (conducting a survey of health-conscious shoppers). Moreover, 84.2% of consumers were much more likely to shop from brands that have taken steps to eliminate toxic chemicals from products. *Id.*

based on the absence of harmful contaminants to maximize the health and wellness of their infants.

59.    Defendant Johnson & Johnson is aware of such consumer concerns and shopping behavior.  To capture this market, Defendant purportedly reformulated their baby care products, then prominently represented on labels and promotional materials that its No-Phthalate Products are free of phthalates to cater to consumers who seek to avoid phthalate exposure.[58]

60.    Johnson & Johnson targeted this consumer need of toxin-free products for their families and babies, and specifically created a "free-of" line of infant cleansing products marketed on every bottle as containing "no parabens, phthalates or dyes".[59]

61.    Johnson & Johnson produces the No-Phthalate Products that are sold to consumers through authorized retailers (to include within the District of Columbia) in stores and online.

62.    Consumers make purchase decisions for products, particularly infant cleansing products designed to safeguard undeveloped immune systems, based in substantial part on the quality and safety of ingredients.

63.    Consumers reasonably believe that the claim "no phthalates" means that Johnson & Johnson's No-Phthalate Products contain zero phthalates of any kind.

---

[58] Meg Tirrell, *Johnson & Johnson to Relaunch Baby-Care Line After its 20% Sales Decline*, CNBC (May 16, 2018), https://www.cnbc.com/2018/05/16/jj-to-relaunch-baby-care-line-after-its-20-percent-sales-decline.html (reporting that Johnson & Johnson is relaunching their baby-care products line, and removed phthalates from its products); *and see*, *Johnson & Johnson to Phase Out Potentially Harmful Chemicals by 2015*, CBS News (Aug. 15, 2012), https://www.cbsnews.com/news/johnson-johnson-to-phase-out-potentially-harmful-chemicals-by-2015/ (reporting that Johnson & Johnson announced that it will remove carcinogenic chemicals and other harmful substances from its adult toiletries and cosmetic products, and will reformulate its baby products) [hereinafter *Johnson & Johnson to Phase Out Potentially Harmful Chemicals by 2015*].
[59] *Id.*

64.     As such, it is of heightened importance that Johnson & Johnson's claims of "no phthalates" are true.

65.     In 2021 and 2022, Plaintiff HLF commissioned independent, chemical analysis testing through accredited ISO-17025 laboratories that reported the presence of a number of phthalates banned for use in children's toys and child care articles in the No-Phthalate Products, and demonstrated Defendant's free-of-phthalates marketing campaign to be false and misleading.

66.     Given the ubiquity of the important public health and public policy positions on phthalate harms, particularly to vulnerable infants and young children, along with Johnson & Johnson's aggressive promotion of its phthalate-free claims, Johnson & Johnson knew, or should have known that the phthalate contaminants were present in the No-Phthalate Products.

67.     The presence of phthalates in the No-Phthalate Products renders Johnson & Johnson's material claims of "no parabens, phthalates or dyes" false and misleading under the DC CPPA, as consumers would not have purchased the No-Phthalate Products had they known these products contained phthalates.

68.     The presence of phthalates in the No-Phthalate Products renders Johnson & Johnson's material claims of thorough, rigorous product assessment testing for safety and quality assurance false and misleading under the DC CPPA, as consumers would not have purchased the No-Phthalate Products had they known these products were not adequately assessed and tested for phthalates.

69.     The presence of phthalates in the No-Phthalate Products renders Johnson & Johnson's material claims of being the "best", "safest", "gentlest", "quality", and "hypoallergic" false and misleading under the DC CPPA, as phthalates are inherently dangerous to human health,

19

and consumers would not have purchased the No-Phthalate Products had they known these products contained phthalates.

70.    As a result of Johnson & Johnson's phthalate-free marketing, D.C. consumers who are led to believe that the No-Phthalate Products are free of concerning levels of contaminants in fact bear the risk of purchasing products that are not free of phthalates.

71.    In reliance of these false and misleading claims, D.C. consumers are enticed to purchase Johnson & Johnson's No-Phthalate Products over the comparable, cheaper products sold by Defendant's competitors.

72.    The presence of various phthalates in Johnson & Johnson's No-Phthalate Products constitutes a violation of DC Code §28-3901 as the No-Phthalate Products were marketed to consumers as containing no phthalates, "best for babies"[60], and represented as having undergone "thorough" assessment,[61]

73.    A reasonable D.C. consumer would not expect infant products advertised as containing "no parabens, phthalates or dyes"[62], "best for babies"[63] and to have undergone "thorough" testing and evaluation,[64] to contain phthalates.

74.    In sum, Defendant deceived D.C. consumers into believing that Johnson & Johnson conducted adequate quality-control testing on the No-Phthalate Products to ensure they were phthalate-free when they either failed to test or tested inadequately for phthalates, resulting in

---

[60] *See* Figures 30, 35.
[61] *See* Figures 30-35.
[62] *See* Figures 1-5.
[63] *See* Figures 30, 35.
[64] *See* Figures 30-35.

contaminated No-Phthalate Products that contain phthalates, yet marketed and sold as phthalate-free.

75.    Johnson & Johnson's labeling and advertising of the No-Phthalate Products tend to mislead and are materially deceptive about the true testing, standard, quality, and ingredients of the No-Phthalate Products. Plaintiff HLF brings this deceptive advertising cause on behalf of themselves, members of the Class, and the general public seeking relief including but not limited to, an injunction to halt Johnson & Johnson's false and misleading marketing and the sale of Johnson & Johnson's No-Phthalate Products, as well as full monetary relief under the law.

76.    The previous examination of the well-published, peer-reviewed literature, as well as state and federal laws regarding the dangers of phthalate, particularly on developing infants and young children, illustrates that Defendant Johnson & Johnson was aware of the harmful health impacts of these toxins to infants and adults when deliberately crafting its advertising campaign for the No-Phthalate Products. Johnson & Johnson is a touted "expert" in baby care products. Defendant has access to the scientific data on the dangers of phthalate exposure, has the resources to engage in the promised, adequate product testing and monitoring, and knew or should have known that its No-Phthalate Products guaranteed as phthalate-free in fact contained phthalates.

77.    Johnson & Johnson's deceptive, literally false phthalate-free marketing is harmful to consumers induced to purchase the No-Phthalate Products, and constitutes unfair trade practices under the DC CPPA, as the No-Phthalate Products are neither adequately tested for phthalates nor phthalate-free as advertised. Johnson & Johnson's false and misleading representations and omissions, including any tendency to mislead or omit, violate the DC CPPA, DC Code §28-3901, *et seq.*

**HLF'S TESTING OF JOHNSON & JOHNSON'S NO-PHTHALATE PRODUCTS**

78.    The No-Phthalate Products tested by Plaintiff HLF are as follows:

a.    Johnson's Baby Body Soap Bar (3 oz)



**Figure 1 Johnson's Baby Bar Packaging Stating "no parabens, phthalates or dyes"**

b.  Johnson's Baby Shampoo with Tear-Free Formula (27.1 fl. oz) & (33.8 fl. oz.)



**Figure 2** **Johnson's Baby Shampoo with Tear-Free Formula Stating "no parabens, phthalates or dyes"**

c.  Johnson's Head-to-Toe Gentle Tear Free Wash & Shampoo (27.1 fl. oz)



**Figure 3** **Johnson's Head-to-Toe Gentle Tear Free Wash & Shampoo stating "no parabens, phthalates or dyes"**

d. Johnson's Head-to-Toe Gentle Baby Cleansing Cloths (15 ct)



**Figure 4** Johnson's Head-to-Toe Cleansing Cloths Stating "Free of Parabens, Phthalates, Alcohol & Dyes. Hypoallergenic"[65] and "no need to rinse"

A. **Plaintiff's Purchase of Defendant's No-Phthalate Products:**

---

[65] Any hypoallergenic claims made regarding the No-Phthalate Products are likely also materially false and deceptive under the DC CPPA, because exposure to phthalates can cause allergic reactions in children. *See* Carl-Gustaf Bornehag et al., *The Association between Asthma and Allergic Symptoms in Children and Phthalates in House Dust: A Nested Case-Control Study*, 112 Env't. Health Perspect. 1393, 1395-1397 (2004)(finding associations between dust concentrations of specific phthalates and asthma, rhinitis, and eczema in Swedish children).

79.    Plaintiff HLF purchased each of the No-Phthalate Products between September 2021 and March 2022 in the District of Columbia for the purpose of phthalate testing and evaluation by ISO-17025 accredited, third-party analytical chemistry laboratories.

**B.    Phthalate-Positive Test Results from Certified Laboratories**

80.    In October 2021 and April 2022, quantitative testing was performed on the No-Phthalate Products by two separate, ISO-17025 accredited, third-party analytical chemistry laboratories commissioned and paid for by Plaintiff HLF.[66]

81.    The independent laboratories analyzed the Defendant's products and utilized generally accepted phthalate-testing methodologies promulgated by federal agencies, including but not limited to the newest, state-of-the-art phthalate testing method certified by the Consumer Product Safety Commission, known as CPSC-CH-C1001-09.4 (2018).

82.    The accredited third-party laboratories produced formal lab reports that listed the various types and quantities of phthalates found in Johnson & Johnson's No-Phthalate Products.

83.    The phthalate testing results are in parts-per million (ppm) and parts-per billion (ppb). 1 part per million = 1,000 parts per billion.

**1.    Johnson's Head-to-Toe Gentle Baby Cleansing Cloths (15 ct.)**

1.    <u>Quantitative Testing Results in October 2021</u>: The sample of Defendant's above-mentioned product yielded a total phthalate count of 28.2 ppm:

i.    Benzylbutyl Phthalate (BBP) = 28.2 ppm

---

[66] Finding contamination in one sample of a manufacture's product is sufficient to state a plausible claim in a DC CPPA deceptive marketing action. *See Beyond Pesticides v. Sargento Foods Inc.,* No. 2021 CA 000178 B, 2021 D.C. Super. LEXIS 11, at *10-14 (D.C. Super. Ct. 2021) (finding that, in a DC CPPA deceptive marketing claim regarding the defendant's no-antibiotics cheese products, independent laboratory testing on a sample of defendant's cheese finding antibiotics was enough to state a plausible claim in a representative action).

**2.**    <u>Quantitative Testing Results in April 2022</u>: The sample of Defendant's above-mentioned product yielded a total phthalate count of 96.6 ppb in the cleansing liquid and a total phthalate count of 238.6 ppb in the cleansing cloths:

<u>Liquid</u>

i.     Di-n-hexyl Phthalate (DHEXP) = 6.3 ppb

ii.    Benzylbutyl Phthalate (BBP) = 44.6 ppb

iii.   Diethyl Hexyl Phthalate (DEHP) = 45.7 ppb

<u>Cloth</u>

i.     Di-n-hexyl Phthalate (DHEXP) = 11.1 ppb

ii.    Benzylbutyl Phthalate (BBP) = 113.9 ppb

iii.   Diethyl Hexyl Phthalate (DEHP) = 113.6 ppb

## 2. Johnson's Baby Soap Bar (3 oz.)

a.     <u>Quantitative Testing Results in October 2021</u>: The sample of Defendant's above-mentioned product yielded a total phthalate count of 30.9 ppm:

i.     Benzylbutyl Phthalate (BBP) = 15.8 ppm

ii.    bis-2 -Ethylhexyl Adipate = 15.1 ppm

b.     <u>Quantitative Testing Results in April 2022</u>: The sample of Defendant's above-mentioned product yielded a total phthalate count of 403.4 ppb:

i.     Di-n-hexyl Phthalate (DHEXP) = 10.6 ppb

ii.    Diethyl Hexyl Phthalate (DEHP) = 392.8 ppb

## 3. Johnson's Baby Shampoo with Tear-Free Formula (27.1 fl. oz) and (33.8 fl. oz.)

a.     <u>Quantitative Testing Results in October 2021</u>:  The sample of Defendant's product at 27.1 fl. oz. yielded a total phthalate count of 26.6 ppm:

i.     Diethyl Phthalate (DEP) = 5.6 ppm

ii.    Benzylbutyl Phthalate (BBP) = 12.6 ppm

iii.   bis-2-Ethylhexyl Adipate = 8.4 ppm

b.     <u>Quantitative Testing Results in April 2022</u>: The sample of Defendant's product at 33.8 fl. oz. yielded a total phthalate count of 112.5 ppb:

i.     Di-n-hexyl Phthalate (DHEXP) = 14.5 ppb

    ii.       Benzylbutyl Phthalate (BBP) = 29.2 ppb

    iii.      Diethyl Hexyl Phthalate (DEHP) = 54.2 ppb

    iv.      Dicyclohexyl Phthalate (DCHP) = 14.6 ppb

**4. Johnson's Head-to-Toe Gentle Tear Free Wash & Shampoo (27.1 fl. oz.)**

    a.    <u>Quantitative Testing Results in October 2021</u>: The sample of Defendant's above-mentioned product yielded a total phthalate count of 46.8 ppm:

    i.       Dimethyl Phthalate (DMP) = 6.2 ppm

    ii.       Benzylbutyl Phthalate (BBP) = 38.5ppm

    iii.      bis-2-Ethylhexyl Adipate = 2.1 ppm

    b.    <u>Quantitative Testing Results in April 2022</u>: The sample of Defendant's above-mentioned product yielded a total phthalate count of 57.6 ppb:

    i.       Di-n-hexyl Phthalate (DHEXP) = 13.0 ppb

    ii.       Diethyl Hexyl Phthalate (DEHP) = 44.6 ppb

<u>**JOHNSON & JOHNSON'S UNLAWFUL ACTS & PRACTICES**</u>

84.    Defendant Johnson & Johnson is aware that there are significant health risks associated with infant and child exposure to phthalates, a known endocrine disrupting chemical.[67] Phthalates are associated with developmental, reproductive, brain, immune, and other concerning health problems, particularly in infants and young children.

85.    Johnson & Johnson is also aware that consumers are concerned with the contents and ingredients of baby skincare products, particularly infant cleansing products that are routinely, frequently used for everyone, and any toxins tainting the products, like phthalates, can be absorbed through the skin or accidentally ingested by the particularly sensitive, vulnerable infant-to-child

---

[67] *Johnson & Johnson to Phase Out Potentially Harmful Chemicals by 2015*; *and see,* Jane Kay, *Johnson & Johnson Removes Some Chemicals from Baby Shampoo, Other Products, Scientific American* (May 6, 2003), https://www.scientificamerican.com/article/johnson-and-johnson-removes-some-chemicals-from-baby-shampoo-other-products/ (reporting that Johnson & Johnson previously pledged to eliminate phthalates from all baby products).

population.

86.     Johnson & Johnson even recommends parents give their babies a warm, nightly bath as a "bedtime ritual" to put babies to sleep and improve bonding using baby cleansing products.[68]  In between bath times, Johnson & Johnson recommends parents to clean their babies with Johnson & Johnson's baby cleansing cloths that have "no need to rinse".[69]

87.     Johnson & Johnson is also aware that parents and shoppers make purchase decisions based on the safety and well-being of their children and family members.

88.     Further, Johnson & Johnson is aware that developing infants are a distinctly vulnerable group with delicate skins and immature immune systems.

89.     Johnson & Johnson's No-Phthalate Products contain quantifiable levels of various phthalates.

90.     Johnson & Johnson's touted 5-Step Safety Assessment Process, or any other systematic, internal testing process to ensure the elimination of phthalates failed to detect and remove the phthalates in the No-Phthalate Products, either due to inadequacy in quality control, or a failure to test as advertised.[70]

91.     Johnson & Johnson markets the No-Phthalate Products as containing no

---

[68] Johnson's, *Guide to Baby Sleep*, https://www.johnsonsbaby.com/sleep/6-weeks (last visited April 15, 2022).
[69] *See* Figure 4; *see also*, Johnson's, *How to Bathe a Newborn Baby*, https://www.johnsonsbaby.com/baby-tips/bath-time?upcean=381371177073 (last visited Apr. 15, 2022) ("Baby Bath Time Without the Bath: Head-To-Toe Cleansing Cloths").
[70] *See* Figures 31 & 32.

phthalates.[71]

92.    Johnson & Johnson's free-of-phthalate marketing of the No-Phthalate Products is literally false.  Defendant's express advertising claims that the No-Phthalate Products contain no phthalates, are produced under a heightened quality control standard, and have undergone a "thorough" assessment process from Johnson & Johnson to ensure safety constitute unlawful trade practices under the DC CPPA. *See* Figures 1-35.

**A.   Defendant's Express Marketing Claims are Misleading and Omit Material Facts**

93.    To target parents seeking out baby cleansing products that are free from harmful chemicals and "the best" for their babies, Johnson & Johnson markets its No-Phthalate Products as containing "no parabens, phthalates or dyes." *See* Figures 1-4.  Johnson & Johnson's free-of-phthalate marketing campaign promotes each of the No-Phthalate Products and is further undergirded by other express, deceptive marketing claims designed to induce consumer trust in order to sweepingly capture the baby cleansing product market.

**1.   Johnson & Johnsons' Baby Body Soap Bar (3 oz):**

94.    The front of the packaging for Johnson & Johnsons' Baby Body Soap Bar (3 oz) has made at least the following express claims that the product contains "no parabens, phthalates or dyes", is "mild & gentle for delicate baby skin", "For over 125 years JOHNSON'S formulas have been specially designed for baby's unique and delicate skin. Great for kids and adults too!", "Hypoallergenic & tested with dermatologists"; "Formulated to be gentle, never harsh", and that "Every JOHNSON'S product is designed to meet or exceed the top internationally recognized regulatory standards". *See* Figures 5-6.

---

[71] *See* Figures 1-4.



**Figure 5** (Screenshot from Johnson & Johnson's website)[72]

---

[72] Our Products, Baby Bar, https://www.johnsonsbaby.com/baby-products/johnsons-baby-bar-soap (last visited Apr. 13, 2022).



**Figure 6 (Screenshot from Johnson & Johnson's website)[73]**

95.    Johnson & Johnson further has made at least the following express claims, on CVS' website (an authorized dealer), regarding Defendant's Baby Body Soap Bar (3 oz), stating that the product is "free of parabens, phthalates and dyes", "Hypoallergenic and dermatologist tested", "Clinically proven mildness", "Gentle enough for your baby's face", "We improved everything", that Johnson & Johnson follows "a 5-step Safety Assurance Process to ensure safe care for your babies", "reformulated", "Now we combine our latest research with our love for babies to raise the bar even higher & improve products", "Our product have fewer ingredients with the same love you've grown to trust". *See* Figures 7-11.

---

[73] *Id.*

Johnson's Baby Body Soap Bar Gentle for Baby Bath and Skin Care, 3 ...    **$3.19**    Only in stores

**Johnson's Baby Body Soap Bar Gentle for Baby Bath and Skin Care, 3 oz**
3 OZ. 3 lbs. Item # 462082

- Johnson's Baby Soap Bar with delicate fragrance, gentle for baby's bath and skin care
- Gentle baby body soap contains no parabens, phthalates, or dyes
- Hypoallergenic and dermatologist tested baby skin care formulated for baby's delicate skin
- Baby body soap formula contains mild moisturizers to help protect baby's skin from dryness
- Baby wash cleanses and moisturizes baby's delicate skin to help keep baby's skin feeling soft
- Convenient baby body soap bar is form-fitting and grippable making bath time easy
- Our baby bath soap has a delicate fragrance & helps keep your baby's face & body clean
- Gently massage baby soap bar against your baby's skin or lather with a soft washcloth, then rinse

Use at bath time to gently keep your baby's skin feeling healthy and smooth with Johnson's Baby Bath Soap Bar, enriched with moisturizer to help protect baby's skin from dryness. Mild enough and gentle for your baby's delicate skin, our baby body bar is hypoallergenic, free of parabens, phthalates and dyes and tested with dermatologists. To use, lather baby soap bar, massage gently over entire body, gently lather, rinse, and snuggle. With its form-fitting shape, our baby body soap bar makes it easy to grip and cleanse your baby during bath time.

Johnson's Originals Always Gentle

**Figure 7 (Screenshot from CVS's website)**[74]



**Figure 8 (Screenshot from CVS's website)**[75]

[74] Johnson's Baby Body Soap Bar Gentle for Baby Bath and Skin Care, 3 oz, CVS, https://www.cvs.com/shop/johnson-s-baby-body-soap-bar-gentle-for-baby-bath-and-skin-care-3-oz-prodid-1010372?skuid=462082&CID=aff:100027119:13296373&cjevent=30f33ecdbb9411ec811000f40a82b821&cjdata=MXxOfDB8WXxww (last visited Apr. 13, 2022).
[75] Id.

50% fewer ingredients



We improved everything. Because gentle means everything.

We are constantly improving our products based on what we hear from you. You told us less is more' and after re-evaluating our formulas, we've reinvented Johnson's, now with 50% fewer ingredients. Because what's good for your baby is good for us all.

**Figure 9 (Screenshot from CVS's website)[76]**

 Why did Johnson's reformulate?

 We are continually learning about babies' specific skin care needs with much of the industry led baby skin care research coming from us! Now we combined our latest research with our love for babies to raise the bar even higher & improve products.

 Are Johnson's products hypoallergenic?

 Our products are free of known allergens* because babies' skin can be sensitive.

*Identified by the Scientific Committee on Consumer Safety of the European Commission (2012)

 How do you ensure the safety and quality of your products?

 We follow a 5-step Safety Assurance Process to ensure safe care for your babies. 1. Sourcing Raw Materials 2. Thoroughly Assessing Ingredients 3. Clinical Evaluation & Testing 4. Testing Real-Life Use Cases 5. Ongoing Evaluation Learn more on our site

**Figure 10 (Screenshot from CVS's website)[77]**

---

[76] *Id.*
[77] *Id.*

Johnson's Baby Body Soap Bar Gentle for Baby Bath and Ski...     Buy 1, Get 1 50% Off     Only in stores
**$3.19**

Experience a New Generation of Gentle



Johnson's Choose Gentle

For over 125 years, Johnson's products have been specially designed for baby's delicate skin. And because we're dedicated to all things gentle, we've reformulated with simpler, gentler formulas, free of parabens, sulfates, & phthalates. Our products have fewer ingredients with the same love you've grown to trust.

**Ingredients**

Sodium Tallowate, Water, Sodium Cocoate (or) Sodium Palm Kernelate, Glycerin, Pentasodium Pentetate, Tetrasodium Etidronate, Titanium Dioxide, Sodium Chloride, Fragrance

**Figure 11** (Screenshot from CVS's website)[78]

---

[78] *Id.*

2. **Johnson & Johnson's Baby Shampoo with Tear-Free Formula (27.1 oz) & (33.8 oz):**

96.      Johnson & Johnson has made at least the following express claims, on its website, regarding Defendant's Baby Shampoo with Tear-Free Formula (27.1 oz)(33.8 oz), stating that the product contains "no parabens, phthalates, sulfates or dyes", is the "#1 choice of hospitals, #1 choice of parents", and is "Triple tested formulation". *See* Figures 12-14.



**Figure 12 (Screenshot from Johnson & Johnson's website)**[79]

---

[79] Our Products, *Baby Shampoo*, https://www.johnsonsbaby.com/baby-products/johnsons-baby-shampoo (last visited Apr. 13, 2022).



**Figure 13 (Screenshot from Johnson & Johnson's website)**[80]

---

[80] *Id.*



**Figure 14 (Screenshot from Johnson & Johnson's website)[81]**

97.     Johnson & Johnson further had made at the least the following express claims, on Walmart's website (an authorized dealer), regarding Defendant's Baby Shampoo with Tear-Free Formula (27.1 oz)(33.8 oz), stating that the product is "Hypoallergenic/no parabens, phthalates, sulfates, or dyes". *See* Figure 15.



**Figure 15 (Screenshot from Walmart's website)[82]**

---

[81] *Id.*

[82] *Johnson's Nourishing Gentle Tear-Free Formula Baby Daily Shampoo, 20.3 fl oz*, Baby Shampoos & Body Washes, https://www.walmart.com/ip/Johnson-s-Nourishing-Gentle-Tear-

98.    Johnson further has made at the least the following claims, on Amazon's website (an authorized dealer), regarding Defendant's Baby Shampoo with Tear-Free Formula (27.1 oz)(33.8 oz), stating that the product contains no "No paraben/phthalates/dyes", "Dermatologist Tested", "Pediatrician Tested", and "Hypoallergenic". *See* Figure 16.



**Classics Baby Shampoo**

| Recommended For | Cleansing & shining |
| --- | --- |
| Hair Type | Fine Baby Hair |
| Benefit | Cleanses baby hair & scalp |
| Highlight Ingredient(s) | Classic J&J baby fresh scent |
| Dermatologist Tested* ? | ✔ |
| Pediatrician Tested*** ? | ✔ |
| Hypoallergenic* ? | ✔ |
| No More Tears | ✔ |
| No parabens/phthalates/dye** ? | ✔ |

**Figure 16 (Screenshot from Amazon's website)[83]**

Free-Formula-Baby-Daily-Shampoo-20-3-fl-oz/736054299?irgwc=1&sourceid=imp_2NJXkF1asxyITUFUy%3A2aWQRMUkGVflWN1SLh3A0&veh=aff&wmlspartner=imp_1460806&clickid=2NJXkF1asxyITUFUy%3A2aWQRMUkGVflWN1SLh3A0&sharedid=&affiliates_ad_id=565706&campaign_id=9383 (last visited Apr. 14, 2022).

[83] *Johnson's Baby Shampoo with Tear-Free Formula, Hair Shampoo for Baby's Delicate Scalp & Skin Gently Washes Away Dirt & Germs, Free of Parabens, Phthalates, Sulfates & Dyes, 27.1*

99.    Johnson & Johnson further has made at the least the following express claims, on Target's website (an authorized dealer), regarding Defendant's Baby Shampoo with Tear-Free Formula, stating that the product is "Phthalate Free", "Dermatologist Tested", "Clean", and "hypoallergenic". *See* Figures 17-18.



**Figure 17** (Screenshot from Target's website)[84]

*fl. oz*, Body Wash,
https://www.amazon.com/gp/product/B07DGK6HC6?ie=UTF8&tag=etaleusjohnsonsbaby-20&linkCode=as2&camp=1634&creative=19450&creativeASIN=B07DGK6HC6 (last visited Apr. 14, 2022).
[84] Johnson's Baby Shampoo - 20.3oz, Baby Toiletries, (last visited Apr. 14, 2022)
https://www.target.com/p/johnson-s-baby-shampoo-20-3oz/-/A-53382606?clkid=c3b133e8Nb78b11ecaf015d7314078638&lnm=201333&afid=ChannelAdvisor&ref=tgt_adv_xasd0002.

Specifications

Scent: Unscented

Suggested Age: 1 Year and Up

Health Facts: Dye-Free, Phthalate-Free, Paraben-Free, Sulfate-Free

Capacity (Volume): 20.3 fl oz (US)

Product Warning: Use with adult supervision

Product Form: Liquid

Includes: Shampoo

Beauty Purpose: Basic Cleansing

Recommended Skin Type: Sensitive

Net weight: 20.3 fl oz (US)

Features: Dermatologist Tested

TCIN: 53388909

UPC: 381371175024

Item Number (DPCI): 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

Origin: Made in the USA or Imported

Description

Johnson's Baby Shampoo provides a mild, gentle clean that won't irritate your baby's eyes during bath time. Especially formulated for fine baby hair and delicate scalp, this gentle cleansing baby hair shampoo gently washes away dirt and germs as it leaves your little one's hair soft, shiny, clean and smelling baby fresh. The Johnson's No More Tears formula is as gentle to the eyes as pure water and won't irritate baby's eyes during bath time. This tear-free baby shampoo is hypoallergenic, pediatrician-tested, and free of parabens, phthalates, sulfates, and dyes. To use, wet baby's hair with warm water, apply tear-free baby shampoo, gently lather, and rinse. For over 125 years, Johnson's formulas have been specially designed for baby's unique and delicate skin and hair. We collaborated with and listened to 11,000 parents, midwives, and pediatricians around the world.



Clean
Your clear choice for clean. Details, by category. • Beauty Baby, Personal Care & Cleaning - formulated without Phthalates, Propyl-paraben & Butyl-paraben, Sodium Laureth Sulfate (SLES) and more. Also, cruelty free and/or not tested on animals • Pesticide Care, Adult Care & Diapers - fragrance free and chlorine free • Pets - formulated with meat, poultry or seafood as the first ingredient, and without artificial colors, flavors, or preservatives. • Car Seats - fabric, foam and labels made without intentionally added Flame Retardants and Stain Repellent (PFAS) • Pest Control & Lawn Care - classified as a Minimum Risk Pesticide by the EPA. Formulated without Phthalates, Propyl-paraben & Butyl-paraben, Sodium Laureth Sulfate (SLES) and more.



Phthalate Free
Formulated without phthalates: A product either carries an unqualified on-pack statement indicating that the product is free from phthalates, or carries an unqualified on-pack statement "no phthalates."



Paraben Free
Formulated without paraben: A product either carries an unqualified on-pack statement indicating that the product is free from parabens, or carries an unqualified on-pack statement "no parabens."

**Figure 18** (Screenshot from Target's website)[85]

---

[85] *Id.*

3. **Johnson's Head-to-Toe Gentle Tear Free Wash & Shampoo (27.1 fl. oz):**

100.    Johnson & Johnson has made at least the following express claims, on its website, regarding Defendant's Head-to-Toe Gentle Tear Free Wash & Shampoo (27.1 fl. oz), stating that the product contains no "parabens, phthalates, sulfates or dyes", "triple tested formulation", "#1 choice of hospitals, #1 choice of parents", and "Hypoallergenic". *See* Figures 19-22.



**Figure 19 (Screenshot from Johnson & Johnson's website)**[86]

---

[86] *Head-To-Toe® Wash and Shampoo*, Our Products, https://www.johnsonsbaby.com/baby-products/johnsons-head-to-toe-baby-wash (last visited Apr. 14, 2022).



**Figure 20** **(Screenshot from Johnson & Johnson's website)**[87]



**Figure 21** **(Screenshot from Johnson & Johnson's website)**[88]

---

[87] *Id.*
[88] *Id.*



**Figure 22** **(Screenshot from Johnson & Johnson's website)**[89]

---

101.    Johnson & Johnson further made at the least the following express claims, on Target's website (an authorized dealer), regarding Defendant's Head-to-Toe Gentle Tear Free Wash & Shampoo (27.1 fl. oz), stating that the product is "New", "Free of Phthalates", "improved, inside and out", "Phthalate-Free", "unqualified on-pack statement 'no phthalates'", "Gentle enough for newborns and good for the whole family", "contains no harsh fragrances, parabens, phthalates, or dyes", "natural", "pure as water", and "Formulated without phthalates". *See* Figures 23-26.



**Figure 23 (Screenshot from Target's website)**[90]

[90] *Johnson's Head-To-Toe Baby Wash and Shampoo - 27.1 fl oz*, Baby Toiletries, https://www.target.com/p/johnson-39-s-head-to-toe-baby-wash-and-shampoo-27-1-fl-oz/-/A-53388231?clkid=c3b133e8Nb78b11ecaf015d7314078638&lnm=201333&afid=ChannelAdvisor &ref=tgt_adv_xasd0002 (last visited Apr. 14, 2022).



**Figure 24** (Screenshot from Target's website)[91]



**Figure 25** (Screenshot from Target's website)[92]

---

[91] *Id.*
[92] *Id.*



**Figure 26 (Screenshot from Target's website)**[93]

---

**4. Johnson's Head-to-Toe Gentle Baby Cleansing Cloths (15 ct):**

102.    The front of the packaging for Johnson & Johnson's Head-to-Toe Gentle Baby Cleansing Cloths (15 ct) has made at least the following express claims that the product is "Free of Parabens, Phthalates, Alcohol & Dyes". *See* Figure 4.

103.    Johnson & Johnson further had made at the least the following express claims, on Amazon's website (an authorized dealer), regarding Defendant's Head-to-Toe Gentle Baby Cleansing Cloths (15 ct), stating that the product is "Hypoallergenic/no parabens, phthalates, sulfates or dyes", "no need to rinse", "Safety is our #1 priority", and that "every product we make is a carefully blended combination of high quality naturally derived ingredients and other carefully evaluated ingredients that ensure the product is safe and best for baby", "leader in safety research", and "At JOHNSON'S we believes nothing is more important than the safety of your baby". *See* Figures 4, 27-29.



**Figure 27 (Screenshot from Target's website)**[94]

----

[94] *Johnson's Head-to-Toe Gentle Baby Cleansing Cloths, Hypoallergenic and Pre-Moistened Baby Bath Wipes, Free of Parabens, Phthalates, Alcohol, Dyes and Soap, 15 ct,* Wipes & Refills,

From the manufacturer



**Figure 28** (Screenshot from Target's website)[95]

**JOHNSON'S Safety Above All**

#1 baby skin care brand with best in class global safety process.*

At JOHNSON'S, we believe nothing is more important than your baby's safety. That's why every product we make is a carefully blended combination of high quality, naturally derived ingredients and other carefully evaluated ingredients that ensure the product is safe and best for baby.

As the #1 baby skin care brand around the world*, we are also a leader in safety research. And we do all this so you can have peace of mind when using our products, and focus on what matters most, your baby's healthy development.





**Johnson's Head-To-Toe Baby Cleansing Cloths**

Use Johnson's Head-To-Toe Baby Cleansing Cloths to give your baby a fast and gentle all-over clean between baths. Suitable for even newborns, these disposable baby Cleansing Cloths allow you to gently cleanse your baby's delicate skin without the need for water. The No More Tears formula is as mild to the eyes as pure water, so these baby wipes can even be used on baby's face. Johnson's Head-To-Toe Baby Cleansing Cloths are hypoallergenic, alcohol-free, and contain no parabens, phthalates, dyes, or soaps. These ultra-mild baby cleansing cloths are dermatologist tested and this product is not tested on animals.

- Almost 2x the size of average baby wipes
- Thick, ultrasoft texture
- Enriched with Johnson's baby lotion
- Pre-moistened, no water needed
- The No More Tears formula is mild to the eyes as pure water
- Hypoallergenic, alcohol free and dermatologist tested
- Free of parabens, phthalates, dyes, or soaps
- Not tested on animals

**Figure 29** (Screenshot from Target's website)[96]

---

https://www.amazon.com/Johnsons-Baby-Cleansing-Hypoallergenic-Packaging/dp/B01H17WE42 (last visited Apr. 14, 2022).
[95] *Id.*
[96] *Id.*

104.    Johnson & Johnson knows the importance of the safety and quality of the No-Phthalate Products and the importance of garnering consumer trust in its effort to capture the baby skincare product market. *See* Figures 30-35.

105.    Johnson & Johnson promotes the quality, ingredients, safety, and thorough testing and assessment of its No-Phthalate Products with webpages and marketing materials dedicated to promoting and elevating its image to represent the highest, leading industry standards. *See id.*

106.    To emphasize this point, Johnson & Johnson proclaims on their website: "We're committed to delivering the best for babies. For decades, we've pioneered research to further understand the unique needs of baby's eyes, skin and hair. This science is behind every one of our gentle and mild products, which meet or exceed industry and regulatory standards."; "125 years of Baby Skincare Expertise"; and "world leader in baby skincare research." *See* Figures 30, 32.



**Figure 30 (Screenshot from Johnson & Johnson's webpage)**[97]

---

[97] *Our Mission*, https://www.johnsonsbaby.com/mission-standards/mission (last visited Apr. 14, 2022).

107.     Johnson & Johnson's deceptive marketing campaign further assures the quality and safety of their baby products to consumers by claiming to adhere to a strict safety assurance process. *See* Figures 30 & 36.  These claims regarding thorough testing are very concrete: "Our Safety Standards:  At Johnson's setting the bar for safe and gentle baby products is always our #1 goal.  That's why we take great care in the processes and science behind our products."; "Our 5-Step Safety Assurance Process"; "We're committed to quality and safety"; "That's why we thoroughly vet every supplier and only accept materials from vendors that meet our rigorous quality and safety standards"; "The ingredient we receive must be assessed and meet the requirements for safe use in personal care products.; "we dig below the surface to evaluate impurities. . ."; "our experts test for every likely issue"; "But we also test our products in the lab under many scenarios- extreme heat, cold, humidity and more – to triple-check safety and consistency"; and "ongoing evaluation".  *See* Figures 31-32.



**Figure 31 (Screenshot from Johnson & Johnson's webpage)[98]**

---

[98] *Our Safety Standards*, https://www.johnsonsbaby.com/mission-standards/safety-standards (last visited Apr. 14, 2022).



### 1. Sourcing Raw Materials

Safe products start with safe raw materials. That's why we thoroughly vet every supplier and only accept materials from vendors that meet our rigorous quality and safety standards.



### 2. Assessing Ingredients

The ingredient we receive must be assessed and meet the requirements for safe use in personal care products. We dig below the surface to evaluate impurities and review the latest findings from personal care, food and medicine studies.



### 3. Clinical Evaluation & Testing

Once we create product formulas, we test them with volunteers in a lab setting. Our experts test for every likely issue, including skin and eye irritation. As a result, our safety database included information on a wide variety of formula reactions that help inform every new formula we make.



### 4. Real Life Use

We test for ways real consumers use our baby products. That starts with actually checking with you! But we also test our products in the lab under many scenarios- extreme heat, cold, humidity and more- to triple-check safety and consistency.



### 5. Ongoing Evaluation

Our finished product is finally available in your local store, but our work isn't done. In addition to watching for new information, we listen to your feedback, whether it's via customer service call or a social media comment, and make updates when necessary so that every product we make is effective.

**Figure 32** **(Screenshot from Johnson & Johnson's webpage)**[99]

---

[99] *Id.*

108.    Moreover, Johnson & Johnson markets its product as containing "Safe and Sound Ingredients." *See* Figure 33.



**Figure 33** (Screenshot from Johnson & Johnson's webpage)[100]

---

109.    Johnson & Johnson, on its Science & Safety page, has further emphasized that its "purpose is to give every baby, everywhere, the healthiest start in life", "[w]e take great care in the processes and science behind our products", and that everyone of its products "is designed to meet or exceed the top internationally recognized regulatory standards".





**Figure 34 (Screenshot from Johnson & Johnson's webpage)**[101]



**Figure 35 (Screenshot from Johnson & Johnson's webpage)**[102]

---

[101] *Our Science & Safety*, https://www.johnsonsbaby.com/purpose-standards/science-safety (last visited Apr. 14, 2022).
[102] *Id.*

110.    Johnson & Johnson's express and implied assurances of the safety and quality of their products, websites, and other marketing give consumers false expectations that the No-Phthalate Products do not contain contaminants such as phthalates, which Defendant claims on every bottle and product packaging to have eliminated. *See* Figures 5-35.

111.    Johnson & Johnson's pervasive marketing campaign was created to induce the trust and thereby the purchase of the No-Phthalate Products. *See id.*

112.    Johnson & Johnson markets itself to consumers as a science-based company with tested, safe, highest quality baby products containing no phthalates. *See* Figures 30-35. These false claims were material to D.C. consumer's decision to purchase the No-Phthalate Products.

113.    Unfortunately for consumers, the No-Phthalate Products in fact contain phthalates that are harmful to developing infants and other vulnerable consumers to whom the No-Phthalate Products are marketed.

114.    The No-Phthalate Products, contrary to the Defendant's deceptive marketing campaign, contain various phthalates banned by state and federal laws, and some of which have been shown to have permanent detrimental effects on child development.

**B.    Johnson & Johnson Knew or Should Have Known Its Representations Were False**

115.    Johnson & Johnson holds its No-Phthalate Products out to the public as "best for babies", "help to support the overall well-being of your baby's skin", and that Johnson & Johnson has "reformulated with simpler, gentle formulas, free of parabens, sulfates, & phthalates". *See* Figures 11, 30, 33, 35.

116.    Johnson & Johnson further touts a "5-Step Safety Assessment Process" designed to

55

ensure "quality" products with "Safe and Sound Ingredients".[103]  Defendant claims, "we take great

care in the processes and science behind our product".[104]  Defendant represents that the process is

"thorough" and assures that its quality control process safeguards consumers against products that

fail Johnson & Johnson's safety and quality standards.[105] *See* Figure 32.


117.    Johnson & Johnson knew or should have known the specific representation it made

on the packaging of the No-Phthalate Products as containing no phthalates was false, as Defendant

claims that the No-Phthalate Products were carefully sourced, "evaluated for impurities", clinically

evaluated, expert tested "for every likely issue", lab tested for safety and consistency, and were

subjected to "ongoing evaluation". *See* Figures 32, 34-35. As Defendant claims that "our attention

and dedication went into every bottle so we can offer the safest and gentlest care for your baby",

Johnson & Johnson knew or should have known how and whether the No-Phthalate Products were

properly sourced, processed, evaluated for impurities, tested, and marketed to support its promise

of "no phthalates" and "phthalate free" baby products. *Id.*


118.    Johnson & Johnson knew, or should have known, the facts demonstrating that the

No-Phthalate Products were mislabeled and falsely advertised from their own touted quality

control assessment and testing process.


119.    Johnson & Johnson made false, misleading, and deceptive representations and

omissions about its No-Phthalate Products, intending for D.C. consumers to rely upon those

---

[103] *See* Figures 32, 34.
[104] *See* Figure 34.
[105] See Figure 32.

misrepresentations and omissions in purchasing the No-Phthalate Products.

120.    Johnson & Johnson knows that D.C. consumers seek out baby cleansing products that consumers believe are properly formulated and thoroughly tested.

121.    Johnson & Johnson is the expert of its own products and is well-positioned to know that phthalates are undesirable and harmful to infant health as the Defendant markets the No-Phthalate Products as containing no phthalates on every label, product packaging, and repeatedly throughout its pervasive online promotional materials.[106] *See* Figures 1-29.

122.    Upon information and belief, Johnson & Johnson knew but has failed to remedy the problem with the No-Phthalate Products containing phthalates, knowingly did not sell the No-Phthalate Products as advertised, thus causing ongoing harm to D.C. consumers.

123.    Reasonable consumers believe that the claims of no phthalates, thoroughly assessed for quality assurance, expert tested, "safest and gentlest", "hypoallergic", and "best for babies" means that the No-Phthalate Products contain zero levels of phthalates of any kind. *See* Figures 6-7, 10, 15-16, 18, 22, 26-27, 29-30, 34.

124.    Upon information and belief and based on the repeated results of positive laboratory testing from different ISO-17025 certified laboratory for phthalates in the No-Phthalate Products,

---

[106] Scott Hensley, *Johnson & Johnson Pledges To Purge Controversial Chemicals*, NPR (Aug. 15, 2012), https://www.npr.org/sections/health-shots/2012/08/15/158832173/johnson-johnson-pledges-to-purge-controversial-chemicals (reporting that "Under pressure from consumer groups, Johnson & Johnson has decided to curb or eliminate a slew of ingredients from its beauty and baby care products.").

Johnson & Johnson either does not test or does not adequately test for phthalates in their advertised No-Phthalate Products, contrary to its advertising campaign that boasts routine, careful, high-standard quality control testing.

125.     D.C. consumers are at risk of real, immediate, and continuing harm if the No-Phthalate Products continue to be sold with misleading and/or deceptive representations or omissions.

126.     The facts as alleged above demonstrate that Johnson & Johnson has violated the DC CPPA, D.C. Code §28-3901 *et seq.*

127.     Johnson & Johnson's conduct is an unlawful trade practice "whether or not any consumer is in fact mislead, deceived or damaged thereby." D.C. Code §28-3904.

**C.   Plaintiff is Authorized Under §28-3905 to Bring this DC CPPA Class Action**

128.     Plaintiff HLF is a non-profit public interest organization with the mission to bring truth and transparency in consumer product advertising to safeguard consumer health and consumer's rights to toxin-free products, particularly with serving the special interest of infants, children, pregnant women, and women of child-bearing age.  Plaintiff HLF has a sufficient nexus to D.C. consumers of the No-Phthalate Products who do not desire exposing themselves or their children to phthalates.  Thus, Plaintiff HLF is able to adequately represent the interests of the Class and the general public.  *See* D.C. Code §28-3905(k)(1)(D).

130     As Johnson & Johnson misrepresents the characteristics and ingredients of the No-Phthalate Products, misrepresents the standard, quality, and grade of the No-Phthalate Products;

misrepresents, fails to state, and uses innuendo and ambiguity in ways which tend to mislead reasonable consumers with regard to material facts about the No-Phthalate Products; and advertise the No-Phthalate Products without the intent to sell the No-Phthalate Products as advertised, Johnson & Johnson's marketing of the No-Phthalate Products violates D.C. Code §28-3901 *et seq.* Specifically, Johnson & Johnson has violated D.C. Code §28-3904, which makes it an unlawful trade practice to:

    a.        represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . . .

    d.        represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

    e.        misrepresent as to a material fact which has a tendency to mislead; . . . .

    f.        fail to state a material fact if such failure tends to mislead;

    f-1.     [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; ... [or]

    h.        advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

131    Johnson & Johnson is a "person" within the meaning of D.C. Code §28-3901(a)(1), and is a merchant under D.C. Code 29-3901(a)(3) and provides "goods" within the meaning of D.C. Code §28-3901(a)(7).

132    Pursuant to D.C. Code §28-3905(1)(C), "[a] nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District of Columbia, including a violation involving consumer goods or services that the organization

purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes."

133    HLF is a nonprofit organization pursuant to D.C. Code §28-3905(k)(1)(C) that purchased the No-Phthalate Products in order to test or evaluate their qualities.

134    Pursuant to D.C. Code §28-3905(k)(1)(D)(i), "public interest organizations may, on behalf of the interests of a consumer or class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person or such trade practice."[107]

135    The only limitation on this power of a public interest organization to act on behalf of consumers is that the public interest organization must have "sufficient nexus to the interests involved of the consumer or class to adequately represent those interests." D.C. Code §28-3905(k)(1)(D)(ii).

136    As set forth in this Complaint, Plaintiff HLF was founded with the purpose of advocating for and educating consumers, including consumers in the District of Columbia, in the

---

[107] *See Animal Legal Def. Fund. v. Hormel Foods Corp.,* No. 19-CV-0397, 2021 D.C. APP. LEXIS 254, at *4-9 (D.C. Sept. 2, 2021) (ruling that a nonprofit organization dedicated to protecting the lives and advancing the interests of animals through the legal system had organizational standing to sue a deli meat manufacturer for misleading advertisements made in violation of the DC CPPA). The Hormel court held that subsection (k)(1)(D) of the DC CPPA modified Article III standing requirements. *Id.* at 12. The Article III standing analysis was replaced with a 3-part statutory test requiring that: 1) the suit be brought by a nonprofit organized and operated, in part, on behalf of consumers; 2) the consumer or class of consumers must be capable of bringing a suit in their own right; and 3) the organization must have a "sufficient nexus" to the interests of the consumer class to adequately represent those interests. *Id.* at 12-13; *and see,* D.C. Code § 28-3905(k)(1)(D).

arena of clean and healthy consumer products. Plaintiff's mission is to bring truth and transparency to food and consumer products labeling. In addition, Plaintiff has retained the undersigned competent counsel to pursue this action, and Plaintiff's counsel has previously represented D.C. consumers in similar actions under the DC CPPA.

137    Defendant Johnson & Johnson's misrepresentation and deceptive marketing of its phthalate-free Products directly impairs the mission and programs of Plaintiff HLF to ensure truth in consumer product advertising and diverts resources away from HLF's other objectives in consumer education, public outreach, research, publications, and working with standard-setting organizations to ensure consumer health and access to toxin-free products.

138    Plaintiff HLF is a public-interest organization pursuant to D.C. Code §28-3905(k)(1)(D) and brings this class action on behalf of members of the general public who could bring the action under D.C. Code 28-3905(k)(1)(A).

139    Section §28-3905(k)(1)(D)(i) of the CPPA provides for non-profit organizational standing and public interest organizational standing to the fullest extent recognized by D.C. Court of Appeals. *See Animal Legal Defense Fund v. Hormel Foods Corp.*, 2021 D.C. APP. LEXIS 254, at *4-9.

140    Plaintiff HLF is a "person" within the meaning of D.C. Code §28-3901(a)(1), a "non-profit organization" within the meaning of D.C. Code §28-3901(a)(14), and a "public interest organization" within the meaning of D.C. Code §28-3901(a)(15).

## CLASS ACTION ALLEGATIONS

141    Plaintiff HLF brings this action pursuant to Superior Court Rule of Civil Procedure

23, on their own behalf and on behalf of a proposed class of all persons in the District of Columbia who purchased the Johnson & Johnson's No-Phthalate Products, through the Defendant's authorized store and online retailers in the District of Columbia, at any time from three (3) years preceding the date of the filing of this Complaint to the time a class is notified in this class action (the "Class Period"):

> **Class:** All persons in the District of Columbia who, at any time from three (3) years preceding the date of the filing of this Complaint to the time a class is notified, purchased Defendant's No-Phthalate Products[108] bearing free-of-phthalate claims for their own personal, family, or household use, and not for resale.

142    Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

143    Plaintiff HLF and the Class Members nevertheless reserve the right to divide into subclasses, expand, narrow, more precisely define, or otherwise modify the class definition prior to (or as part of) filing a motion for class certification.

144    This action is maintainable as a class action under Rule 23(a), (b)(2), and (b)(3) of the District of Columbia Superior Court Rules of Civil Procedure.

145    **Numerosity.** The Class consists of at least hundreds, if not thousands, of consumers who purchased Johnson & Johnson's No-Phthalate Products in the District of Columbia. The class

---

[108] 1) Johnson & Johnson's Baby Soap Bar (3 oz), 2) Head-to-Toe Gentle Baby Cleansing Cloths (15 ct), 3) Baby Shampoo with Tear-Free Formula (27.1 fl. oz) & (33.8 fl. oz.), and 4) Head-to-Toe Gentle Tear Free Wash & Shampoo (27.1 fl. Oz).

is so numerous that joinder of all members is impracticable, and the disposition of these claims in a class action will benefit the parties and the Honorable Court.[109]

146    **Commonality and Predominance.** The questions of law and fact common to the Class have the capacity to generate common answers that will drive resolution in this action.[110] They predominate over any questions affecting only individual class members. Common questions of law and fact include, but are not limited to, the following:

   a.    whether Defendant has engaged in deceptive and misleading trade practices alleged by marketing and selling the No-Phthalate Products as free of phthalates when these products contained phthalates;

   b.    whether Defendant knew or should have known that the No-Phthalate Products contained various types of phthalates;

   c.    whether Defendant has falsely represented that the No-Phthalate Products are of a certain quality, including, but not limited to assurances that the No-Phthalate Products are "best for babies", "help to support the overall well-being of your baby's skin", "gentlest", "hypoallergic", "safest", and "quality";

---

[109] The "class is so numerous that joinder of all members is impracticable." D.C. Super. Ct. R. Civ. P. 23(a)(1).

[110] There "are questions of law or fact common to the class." D.C. Super. Ct. R. Civ. P. 23(a)(2); *and see*, D.C. Super. Ct. R. Civ. P. 23(b)(3) (The "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.").

d.  whether Defendant has falsely represented that Johnson & Johnson conducted a "thorough", "rigorous", multi-step product assessment in the manufacturing and formulation of its No-Phthalate Products and tested the products for safety and quality assurance;

e.  whether Defendant Johnson & Johnson in fact conducted appropriate and adequate phthalate testing on its No-Phthalate Products marketed as free of phthalates and removed any phthalates detected;

f.  whether Defendant concealed and failed to disclose that the No-Phthalate Products were marketed as phthalate-free when they contained various types phthalates;

g.  whether Defendant had knowledge that representations associated with the free-of-phthalates marketing campaign were false, deceptive, and misleading, and were unjustly enriched by their actions;

h.  whether Defendant's misrepresented and/or omitted facts are material to a reasonable consumer;

i.  whether Defendant's practices and representations related to the manufacturing, testing, marketing, distribution, and sale of the No-Phthalate Products constituted misleading concealment;

j.  whether Defendant's practices and representations with regard to the labeling and advertising of the No-Phthalate Products constituted a breach of express and implied warranty.

k.  whether the Plaintiff and the Class members have sustained damages with respect

to the claims asserted herein, and if so, the proper measure of those damages;

l.  the proper equitable and injunctive relief;

m.  the proper amount of restitution or disgorgement;

n.  the proper amount of reasonable litigation expenses and attorneys' fees; and

o.  whether Defendant's conduct constitutes unfair trade practices under the DC CPPA.

147    The Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Plaintiff HLF and by the Class members under the same legal theories. Identical violations of the DC CPPA are at issue in this action. Individual questions, if any, pale by comparison to the numerous common questions that dominate.

148    The injuries sustained by the Plaintiff and Class Members flow, in each instance, from a common nucleus of operative facts, namely the Defendant's unlawful trade practices. In each instance, Johnson & Johnson misrepresented the ingredients, quality, standard, and testing of the No-Phthalate Products.

149    Plaintiff HLF and the Class Members have been damaged by the Defendant's misconduct: Plaintiff HLF and the Class Members purchased the No-Phthalate Products that were represented as containing no phthalates, as of the safest and highest quality, and as having undergone a "thorough" assessment process when in fact the No-Phthalate Products contained harmful phthalates.

150    **Typicality.** Plaintiff HLF's claims are typical of the claims of the Class because they were induced by Defendant's misleading representations to purchase the No-Phthalate

Products and were injured thereby.[111] The claims of Plaintiff and other members of the Class are based on the same legal theories and arise from the same false, misleading, and unlawful trade conduct.

151    **Adequacy.** Plaintiff HLF is an adequate representative of the Class because their interests do not conflict with the interests of other Class members.[112] Each class member is entitled to damages reflecting a similar purchase or purchases that each class member made. Plaintiff has retained competent and experienced class action counsel who intend to vigorously prosecute this action. The class members' interests will be fairly and adequately protected by Plaintiff HLF and their counsel.

152    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because joinder of all class members is impracticable. The amount at stake for each consumer, while significant, is such that individual litigation would be inefficient and cost-prohibitive. Additionally, adjudication of this controversy as a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the claims asserted herein. Plaintiffs anticipate no difficulty in the management of this action as a class action.

153    **Declaratory and Injunctive Relief.** This Court should certify an injunctive class under Superior Court Civil Rule 23(b)(2)[113], because Defendant has acted on grounds that apply generally to the Class by mispresenting the testing, quality, standards, and ingredients of the No-

---

[111] The "claims or defenses of the representative parties are typical of the claims or defenses of the class." D.C. Super. Ct. R. Civ. P. 23(a)(3).
[112] The "representative parties will fairly and adequately protect the interests of the class." D.C. Super. Ct. R. Civ. P. 23 (a)(4).
[113] The "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." D.C. Super. Ct. R. Civ. P. 23(b)(2).

Phthalate Products. Plaintiff HLF and the Class Members seek an order enjoining Johnson & Johnson's false and misleading marketing and the sale of the No-Phthalate Products.

154     **Notice to the Class.** Plaintiff HLF anticipates that this Court can direct notice to the Class, to be effectuated by publication in major media outlets and the internet, and by reference to Defendant's book and records.

<u>CLAIMS FOR RELIEF</u>

<u>COUNT I</u>
<u>VIOLATION OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION</u>
<u>PROCEDURES ACT, D.C. CODE § 29-3901 *ET SEQ*</u>
<u>(On behalf of the Plaintiff individually and on behalf of the Class Members)</u>

155     Plaintiff HLF incorporates by reference all the allegations of the preceding paragraphs as if fully set forth herein.

156     Plaintiff HLF asserts the existence of a Class (as defined herein), and allege Defendant Johnson & Johnson's violations of the DC CPPA on behalf of themselves, the members of the Class, and the general public.

157     Plaintiff HLF brings this claim pursuant to the District of Columbia Consumer Protection Procedures Act, the purpose of which is to "assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices." D.C. Code § 28-3901(b)(1). The DC CPPA "establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia." D.C. Code § 28-3901(c).

158     Johnson & Johnson knew, or should have known, that its representations regarding the assessment and testing process to ensure the elimination of phthalates in the No-Phthalate

Products were false or misleading, and as such, violate the DC CPPA.

159    In violation of the CPPA, Defendant employed misrepresentation, and/or the knowing concealment, suppression, or omission of material facts in its sale and advertisement of Defendant's No-Phthalate Products in the District of Columbia.

160    Defendant's concealment, suppression, misrepresentations and/or omissions pertaining to Defendant's No-Phthalate Products as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including the Plaintiff and members of the Class.

161    As a result of their purchase of Defendant's No-Phthalate Products, Plaintiffs HLF and the members of the Class sustained ascertainable loss and damage.

162    Plaintiff and the members of the Class are entitled to recover their actual and statutory damages, attorneys' fees, punitive damages, and injunctive or other equitable relief, pursuant to D.C. Code § 28-3905(k)(2)(A-F).

163    Furthermore, Defendant's unlawful conduct set forth in this Complaint was and is outrageous because Defendant committed egregious wrongdoings while acting with evil motive, malice, and willful disregard of the rights of others and for the rights of Plaintiff and members of the Class and warrants an award of punitive damages to deter Defendant, and others in similar circumstances, from committing such actions in the future.  *See* D.C. Code § 28-3901(b)(1).

## COUNT II
## UNJUST ENRICHMENT AND DISGORGEMENT OF PROFITS
### (On behalf of the Plaintiff individually and on behalf of the Class Members)

164    Plaintiff HLF incorporates by reference all the allegations of the preceding

paragraphs as if fully set forth herein.

165     Plaintiff HLF and the Class members conferred upon Defendant benefits that were non-gratuitous and constitute unjust takings.[114]

166     Defendant accepted or retained the benefits conferred by the Plaintiff and the Class members despite Johnson & Johnson's deceptive advertising, material misrepresentations, and omissions of material fact with regard to the ingredients, quality, standard, and testing of the No-Phthalate Products.

167     Retaining the benefits conferred upon Defendant by the Plaintiff and Class members under these circumstances makes Johnson & Johnson's retention of the benefits unjust and inequitable.

168     Under common law principles of unjust enrichment, Defendant should not be permitted to retain the benefits of this unjust enrichment.

169     As a result of the foregoing, Plaintiff and the Class members have suffered damages, as set forth above.

170     Plaintiff HLF and the members of the Classes seek disgorgement of all profits resulting from such over payment and from which Plaintiffs and the members of the Class may

---

[114] Under D.C. law, ""[u]njust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.'" *In re APA Assessment Fee Litig.,* 766 F.3d 39, 45-52 (D.C. Cir. 2014) (finding that the district court erred in dismissing the plaintiffs' unjust enrichment claims where the defendant organization misled members into believing that the they had to pay an additional fee that was described as "MUST PAY" when payment was not actually required)(citing *News World Commc'ns, Inc. v. Thompsen,* 878 A.2d 1218, 1222 (D.C. 2005).

seek restitution in a manner established by the Court.

## COUNT III
### DECLARATORY AND INJUNCTIVE RELIEF
**(On behalf of the Plaintiff individually and on behalf of the Class Members)**

171    Plaintiff HLF incorporates by reference all the allegations of the preceding paragraphs as if fully set forth herein.

172    Plaintiff HLF and the members of the Class seek declaratory and injunctive relief against the Defendant Johnson & Johnson.

173    Plaintiff HLF and the members of the Class are entitled to declaratory relief establishing that Johnson & Johnson is engaging in unfair and deceptive practices, that its conduct constitutes negligent and intentional misrepresentation and/or concealment.

174    Plaintiff HLF and the members of the Class are entitled to a declaration that the false statements and representations concerning the No-Phthalate Products is in violation of the DC CPPA. Johnson & Johnson should be enjoined from its false and misleading marketing and the sale of the No-Phthalate Products.

## COUNT IV
## BREACH OF WARRANTY
**(On behalf of the Plaintiff individually and on behalf of the Class Members)**

175    Plaintiff HLF incorporates by reference all the allegations of the preceding paragraphs as if fully set forth herein.

176    At all times relevant to this action, Johnson & Johnson marketed and promoted the No-Phthalate Products accompanied by implied and express warranties and representations to Plaintiff HLF and the Class Members that the No-Phthalate Products contained no phthalates, are

the "best for babies", "safest", assessed for impurities, and have undergone "thorough" evaluation and testing.

177    Defendant knew, or should have known, that Plaintiff HLF and the Class Members rely on Johnson & Johnson's assurances as they are the authorities on formulating and assessing its baby care products, and rely on the implied and express warranties and deceptive representations found in their labels and promotional materials, which constitutes a breach of warranty.[115]

178    At all times relevant to this action, these implied warranties and representations were false, misleading, and deceptive as the No-Phthalate Products were found to contain phthalates in direct contradiction to Johnson & Johnson's express free-of-phthalate assurances. *See* Figures 1-4.

179    As a direct result of the breach of warranties by Defendant, Plaintiff HLF and the Class Members have been injured.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff HLF, on behalf of themselves and members of the proposed class herein, pray for judgment against the Defendant including the remedies available under D.C. Code §28-3905(k)(2)(A-F) for:

A.  An Order certifying that the action may be maintained as a class action;

B.  An Order appointment Plaintiff HLF as class representative and Plaintiff's counsel as class

---

[115] *See* Figures 5-35.

counsel;

C.  A Declaration that Defendant's conduct is in violation of the CPPA;

D.  An Order enjoining Defendant's conduct found to be in violation of the CPPA;

E.  An Order requiring Defendant to provide corrective advertising to the residents of the District of Columbia that restores consumers;

F.  An Order requiring the Defendant to pay treble damages or $1,500 per violation, whichever is greater, to Plaintiff and all members of the Class;

G.  An Order granting Plaintiff's costs, expenses, and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law;

H.  An Order awarding Plaintiff and the Class punitive damages;

I.  And any such further relief as this Court may deem just and proper.

## Jury Trial Demanded

Plaintiff hereby demand a trial by jury on all triable issues.

Dated:  April 15, 2022

Respectfully submitted,

_____/s/_____

Julie Oliver-Zhang, *Esq*.
(D.C. Bar No. 997183)
**Oliver-Zhang Law, PLLC**
810 New Hampshire Ave. NW

Washington, DC 20037
Phone: (202) 643-1110
Fax: (202) 643-1596
Email: julie@oliverzhanglaw.com

**Lead Counsel for Plaintiff HLF**



**Superior Court of the District of Columbia**
CIVIL DIVISION – Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Case No. _____

## COMPLAINT
Jurisdiction of this Court is founded on D.C. Code § 11-921.

HealthyLivinG Foundation, Inc.
PLAINTIFF                                    vs

370 S. Doheny Dr.
Address (No Post Office Boxes)

Beverly Hills  California  90211
City        State        Zip Code

(310) 403-6995
Telephone Number

_____
Email Address (optional)

Johnson & Johnson
DEFENDANT

One Johnson & Johnson Plaza
Address (No Post Office Boxes)

New Brunswick  New Jersey  08933
City        State        Zip Code

(732) 524-0400
Telephone Number

_____
Email Address (optional)

1.  Write a short and plain statement of your claim, including any relevant facts, dates, and locations:

Plaintiff HLF, a non-profit consumer protection public interest group, brings this class action under the DC CPPA,

and alleges Defendant Johnson & Johnson has engaged in unlawful practices such as the deceptive labeling, marketing,

and sale of Johnson & Johnson's baby skincare products in the District of Columbia,

as the products are marketed as free-of-phthalates when they

are contaminated with concerning quantities of different types of phthalates.

2.  What relief are you requesting from the Court? Include any request for money damages.

A. An order certifying this class action and appointing Plaintiff as class representative.

B.  Declaration that Defendants' conduct is in violation of the CPPA and enjoining Defendant's unlawful conduct.

C. An Order requiring Defendants to provide corrective advertising.

D. An Order requiring the Defendant to pay treble damages or $1,500 per violation, whichever is greater, costs, attorney's fees, and punitive damages.

3.  State any other information, of which the Court should be aware:

................................................................................................................

................................................................................................................

................................................................................................................

................................................................................................................

................................................................................................................

................................................................................................................

................................................................................................................

## SIGNATURE

To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to
harass the Defendant(s). Superior Court Civil Rules 11(b).

_Yula Olur — (how)_
SIGNATURE

4-15-2022
DATE

Subscribed and sworn to before me this _15th_ day of _April_ 20 _22_.

_____
(Notary Public/Deputy Clerk)

2

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

HealthyLivinG Foundation

Case Number: _____

vs

Date: April 14, 2022

Johnson & Johnson Consumer, Inc.

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*<br>Julie Oliver-Zhang | Relationship to Lawsuit |
| Firm Name:<br>Oliver-Zhang Law | ☒ Attorney for Plaintiff<br>☐ Self (Pro Se) |
| Telephone No.:        Six digit Unified Bar No.:<br>(202) 643-1110        997183 | ☐ Other: _____ |

TYPE OF CASE:   ☐ Non-Jury   ☒ 6 Person Jury      ☐ 12 Person Jury

Demand: $ _____      Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____   Judge: _____   Calendar #:_____

Case No.:_____   Judge: _____   Calendar#:_____

---

NATURE OF SUIT:      *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

☐ 01 Breach of Contract        ☐ 14 Under $25,000 Pltf. Grants Consent   ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty        ☐ 17 OVER $25,000 Pltf. Grants Consent   ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument     ☐ 27 Insurance/Subrogation                ☐ 26 Insurance/Subrogation
☐ 07 Personal Property              Over $25,000 Pltf. Grants Consent         Over $25,000 Consent Denied
☐ 13 Employment Discrimination ☐ 07 Insurance/Subrogation                ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees         Under $25,000 Pltf. Grants Consent        Under $25,000 Consent Denied
                               ☐ 28 Motion to Confirm Arbitration
                                   Award (Collection Cases Only)

---

**B. PROPERTY TORTS**

☐ 01 Automobile          ☐ 03 Destruction of Private Property   ☐ 05 Trespass
☐ 02 Conversion          ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

---

**C. PERSONAL TORTS**

☐ 01 Abuse of Process            ☐ 10 Invasion of Privacy           ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection     ☐ 11 Libel and Slander                  Not Malpractice)
☐ 03 Assault and Battery         ☐ 12 Malicious Interference        ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 13 Malicious Prosecution         ☐ 19 Wrongful Eviction
☐ 05 Deceit (Misrepresentation)  ☐ 14 Malpractice Legal             ☐ 20 Friendly Suit
☐ 06 False Accusation            ☐ 15 Malpractice Medical (Including Wrongful Death) ☐ 21 Asbestos
☐ 07 False Arrest                ☐ 16 Negligence- (Not Automobile,  ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                           Not Malpractice)               ☐ 23 Tobacco
                                                                    ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE        IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- [ ] 01 Accounting
- [ ] 02 Att Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
  (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [ ] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- [X] 18 Product Liability

- [ ] 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

**II.**

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
  Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administration Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151.9 (m)]
- [ ] 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- [ ] 21 Petition for Subpoena
  [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

**D. REAL PROPERTY**

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

_Attorney's Signature_                    April 14, 2022
_____                    _____
Attorney's Signature                              Date

CV-496/ June 2015

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

HealthyLivinG Foundation, Inc.
_____
Plaintiff

vs.

C T Corporation System                                Case Number _____
_____
Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Julie Oliver - Zhang
_____
Name of Plaintiff's Attorney

810 New Hampshire Ave NW,
_____
Address
Washington DC 20037

(202) 643 - 1110
_____
Telephone

_Clerk of the Court_

By _____
Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                           Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

HealthyLivinG Foundation, Inc.
_____
                    Plaintiff

vs.

                                                    Case Number _____

Johnson & Johnson Consumer, Inc.
_____
                    Defendant

**SUMMONS**

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Julie Oliver - Zhang
_____              _Clerk of the Court_
Name of Plaintiff's Attorney

810 New Hampshire Ave NW,
_____    By _____
Address                                                          Deputy Clerk
Washington DC 20037

(202)643 - 1110
_____    Date _____
Telephone

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오    የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                        Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

HealthyLivinG Foundation, Inc.
_____
Plaintiff

vs.

Johnson & Johnson                                    Case Number _____
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Julie Oliver-Zhang
_____
Name of Plaintiff's Attorney

810 New Hampshire Ave NW,
_____
Address
Washington DC 20037
_____

(202)643-1110
_____
Telephone

_Clerk of the Court_

By _____
Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주세요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español