UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHEMICAL TOXIN WORKING GROUP INC., d/b/a HEALTHYLIVING FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER INC.,<br><br>Defendants. | Case No. 1:22-cv-1259-RCL |

## MEMORANDUM OPINION

Plaintiff Chemical Toxin Working Group Inc., d/b/a HealthyLivinG Foundation ("HLF"), moves to remand this action to the Superior Court of the District of Columbia ("Superior Court"). Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. ("JJCI"), oppose remand, claiming this Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Upon consideration of the parties' filings, the applicable law, and the facts of this case, the Court concludes that it has jurisdiction under CAFA. Accordingly, HLF's motion to remand will be **DENIED**.

### I. BACKGROUND

Plaintiff HLF is a "non-profit public interest organization" headquartered in California. *See* Compl. ¶ 13, Ex. 1 to Mot. to Remand ("Mot."), ECF No. 10-1. Defendants, Johnson & Johnson and Johnson & Johnson Consumer Inc. (together, "JJCI"), are "New Jersey-based corporation[s]" with their "principal place of business and headquarters" in New Jersey. *Id.* ¶ 25–26.

On April 15, 2022, HLF filed a complaint in the Superior Court. *See* Compl. It alleges that JJCI "deceptive[ly] label[ed], market[ed], and s[old]" five different baby hygiene products ("Baby

1

Products") as "free of ... phthalates" when they allegedly did contain phthalates of which JJCI "knew, or should have known." *Id.* ¶¶ 1–5, 66.

HLF in this action claims to represent a putative class of "all persons in the District of Columbia who purchased the Baby Products at any time from [three] years preceding the date of the filing of [the] Complaint to the time a class is notified in this action." *Id.* ¶¶ 141–145. HLF further asserts that JJCI violated the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq.* ("CPPA"), and breached its express and implied warranties. *Id.* ¶¶ 155–63, 175–79.

Among other remedies, HLF's complaint seeks "full monetary relief available under the law[,]" (*Id.* ¶¶ 8, 75), and award of "treble damages or $1,500 per [CPPA] violation, whichever is greater, to [HLF] and all members of the Class[,]" (Compl., Prayer for Relief ¶ F).

JJCI filed a Notice of Removal, pursuant to 28 U.S.C. § 1332(d), to remove the case to the U.S. District Court for the District of Columbia on the grounds that this class action satisfies the requisites of CAFA—minimal diversity, over 100 putative class members, and an amount in controversy that exceeds $5 million—and therefore that this Court has original jurisdiction. *See* Defs.' Notice of Removal ¶ 5, ECF No. 1. Subsequently, HLF filed a motion to remand the case back to Superior Court. *See Mot.* JJCI oppose the remand. *See* Mot. to Remand Resp. ("Resp."), ECF No. 13.

## II.   LEGAL STANDARDS

Under CAFA, a defendant may remove a class action complaint to federal court provided the parties are minimally diverse, the class-wide amount in controversy exceeds $5 million, and there are more than 100 putative class members. 28 U.S.C. § 1332(d)(2), (5)(B).

In the first instance, a defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal," 28 U.S.C § 1446(a), following the general pleading requirement of Fed. R. Civ. P.

8(a). Such a statement need include only a "plausible allegation" that the requirements of 28 U.S.C. § 1332(d) are met and does not necessitate evidentiary submissions to support that conclusion. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84, 89 (2014).

Likewise, when a plaintiff seeks remand of a case removed to federal court, the court generally evaluates the defendant's notice of removal to determine whether its plausible factual allegations, accepted as true, establish federal jurisdiction. *Pleznac v. Equity Residential Mgmt., L.L.C.*, No. 17-CV-2732 (CRC), 2018 WL 10196622, at *2 (D.D.C. May 8, 2018) (citing *Dart Cherokee*, 574 U.S. at 87, and Fed. R. Civ. P. 8(a)).

The defendant's amount-in-controversy allegation should be accepted "[if it is] not contested by the plaintiff or questioned by the court[.]" *Dart Cherokee*, 574 U.S. at 87. If the plaintiff contests the defendant's allegation, § 1446(c)(2)(B) instructs: "[R]emoval ... is proper on the basis of an amount in controversy asserted" by the defendant "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold." *Id.* at 88.

The defendant has the burden of proof in defending the removal or overcoming the motion to remand, *Breakman v. AOL LLC,* 545 F.Supp.2d 96, 100 (D.D.C. 2008), but that burden is not "daunting." *Gilmer v. Walt Disney Co.*, 915 F. Supp. 1001, 1006 (W.D. Ark. 1996); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1185 (E.D. Cal. 2020). The defendant need not "prove [CAFA's requirements] beyond all doubt or to banish all uncertainty about [them]." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). Nor need the defendant prove the amount in controversy to a legal certainty. *Sloan v. Soul Circus, Inc.*, No. CV 15-01389 (RC), 2015 WL 9272838, at *5 (D.D.C. Dec. 18, 2015) (citing *Doe v. Georgetown Synagogue—Kesher Israel Congregation*, 118 F. Supp. 3d 88, 93 (D.D.C. 2015). While the

defendant has the burden of proof "... [it] does not mean that [it] cannot ask the court to make common-sense inferences." *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015); *see also Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 886 (9th Cir. 2013); *Id.* Moreover, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 89.

### III. DISCUSSION

In order to resolve the motion to remand in this case, the Court must resolve three issues: (1) whether there is minimal diversity between the parties; (2) whether JJCI has shown that the amount in controversy exceeds $5 million, (3) and whether the putative class has at least 100 members. The Court concludes that all three requirements are met, and thus remand to Superior Court is inappropriate.

#### A. Minimal Diversity

For class actions, CAFA replaced the normal requirement of complete diversity of citizenship among all parties with a requirement of minimal diversity. *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014). Under that requirement, federal courts may exercise jurisdiction over a class action where "any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2)(A); *McMullen v. Synchrony Bank*, 82 F. Supp. 3d 133, 137 (D.D.C. 2015).

Here, the putative class is comprised of District of Columbia consumers, *see* Compl. ¶ 141, while JJCI are "New Jersey-based corporation[s]" with their "principal place of business and headquarters" in New Jersey, *id.* ¶ 25-26, and incorporated in Delaware, *see* Defs.' Corporate Disclosure Statement, ECF No. 2.

Accordingly, the Court accepts these facts as presented by the parties that neither shares common citizenship that would lend to extinguish diversity between them. *See Johnson v.*

4

*Advance America*, 549 F.3d 932, 935 (4th Cir. 2008); *Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 956 (6th Cir. 2017) (holding that a corporation is a citizen of a state where its incorporated and/or which is their principal place of business. Therefore, there is minimal diversity between the parties.

### B. Amount in Controversy

In order to apply CAFA, the amount in controversy must exceed the sum or value of $5 million. 28 U.S.C. § 1332(d)(2). When determining the amount in controversy in a CAFA case, "the claims of all named and unnamed members of the proposed class are aggregated." *Georgetown Synagogue*, 118 F. Supp. 3d at 93; *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1347 (2013).

The amount in controversy is an estimate of the total amount in dispute; not a prospective assessment of a defendant's liability. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see, e.g., Breathe DC v. Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d 163, 170 (D.D.C. 2017) (rejecting the legal certainty standard). Accordingly, the defendant has some latitude in estimating the amount in controversy in the early stages of litigation. *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 993–994 (9th Cir. 2022); *see also Oshana v. Coca–Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006) (accepting a defendant's estimate of the amount in controversy, provided it was made in good faith and supported by evidence).

"A removing party ... [need] only ... establish the amount in controversy by a good faith estimate that is plausible and adequately supported by the evidence." *Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017); *see also Pretka*, 608 F.3d at 754; *Sloan*, 2015 WL 9272838, at *5. The defendant's claim "must be able to rely on a chain of reasoning that includes

5

assumptions ..., as long as the reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 993; *see also Pretka*, 608 F.3d at 754; *Robertson*, 814 F.3d at 240.

On these principles, JJCI prevails in demonstrating that the amount in controversy exceeds CAFA's $5 million requirement based on HLF's prayer for statutory damages alone.

Among other remedies sought, HLF seeks an award of "treble damages or $1,500 per [CPPA] violation, whichever is greater, to [HLF] and all members of the Class." Compl., Prayer for Relief ¶ F. Under the CPPA, a "violation" of the statute occurs each time a customer purchases an allegedly mislabeled product. *See Sloan*, 2015 WL 9272838, at *8 ("CCPA statutory damages ... flow from ... each purchase [class members] made").

As JJCI does not directly sell the Baby Products to consumers, it has estimated that 27,551 units of the Baby Products were sold in the District of Columbia during the class period, or approximately 0.2% of JJCI's 13,775,447 wholesale sales in the United States from April 1, 2019, to present. *See* Decl. of Kirsten Hurley ("Hurley Decl.") ¶¶ 5, 10, ECF No. 13. This estimate is relative to the size of the population of the District of Columbia compared with the total population of the United States. Resp. 15.

CPPA entitles plaintiffs and class members to statutory damages of up to "$1,500 per violation[,]" D.C. Code § 28-3905(k)(2)(A)(I), and each sale of the Baby Products in the District during the class period would constitute a "violation" of the CCPA as the Complaint alleges. Thus, the 27,551 sales and "violations" could lead to approximately *$41,326,500* in statutory damages, more than exceeding the threshold for jurisdiction under CAFA.

HLF argues this estimation by JJCI is speculative and does not accurately give rise to the necessary amount in controversy on the preponderance of the evidence standard outlined in *Dart Cherokee*. Mot. 8. This Court disagrees.

6

The Court has discretion to make "common-sense inferences" when determining whether jurisdiction exists, *Robertson*, 814 F.3d at 240, and can accept logical assumptions such as that consumers in a particular state purchase in proportion to consumers nationwide unless those assumptions prove untrue by a preponderance of the evidence. *See Allred v. Kellogg Co.*, No. 17-cv-1354-AJB-BLM, 2018 WL 1158885, at *2 (S.D. Cal. Jan. 9, 2018) (finding "reasonable" defendant's estimate of California sales figures that took its "nationwide sales figures" and multiplied them by 12.5%, since "California has 12.5% of the nation's population").

JJCI has offered an estimate of the amount in controversy and its theory in developing that conclusion. Hurley Decl. ¶¶ 5, 10. Given the early stage of this litigation and the fact that JJCI does not possess direct evidence (i.e., state-specific sales records), JJCI has some legal latitude in estimating the amount in controversy. *Jauregui*, 28 F.4th at 993–994.

The Court emphasizes that JJCI's amount in controversy estimate is not supposed to be a prospective assessment of its liability, *Lewis*, 627 F.3d at 400, but merely a reflection of the maximum amount HLF could reasonably recover. *Arias*, 936 F.3d at 927. Therefore, JJCI does not have to "prove [CAFA's requirements] beyond all doubt[,]" *Pretka*, 608 F.3d at 754, or to a legal certainty. *Sloan*, 2015 WL 9272838, at *5. As long as such amount is determined by the Court to be a reasonable assessment made in good faith, *Roppo*, 869 F.3d at 579; *Jauregui*, 28 F.4th at 993, the Court will accept the amount in controversy allegation without requiring evidentiary submissions to validate it and decide, by the preponderance of the evidence, if it exceeds the jurisdictional threshold, *Dart Cherokee*, 574 U.S. at 84, 87, 89.

Hence, this Court finds JJCIs' amount in controversy allegation, based on a 0.2% proportion of nationwide wholesale sales figures relative to the population of the District of Columbia compared with the nation's total population, was reached in good faith and is

7

reasonable as sustained by foregoing reasons consistent with § 1446(c)(2)(B). Therefore, the Court agrees with JJCI and finds the amount in controversy, in this case, does exceed the jurisdictional threshold by the preponderance of the evidence.[1]

### C. Putative Class Size

For an action to be removable under CAFA, the proposed plaintiff class must consist of 100 or more people. 28 U.S.C. § 1332(d)(5)(B). CAFA defines "class members" as "the persons (named or unnamed) who fall within the definition of the proposed or certified class." *Id.* § 1332(d)(1)(D).

HLF's Complaint alleges that the putative class "consists of at least hundreds, if not thousands, of consumers." Compl. ¶ 145. By making that statement in a filing in Superior Court, HLF "certifies that to the best of [its] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,]" this "factual contention" about the class size "has evidentiary support." D.C. Civ. R 11.

Nevertheless, HLF argues that it is JJCI's burden to discover the putative class size to ascertain the amount in controversy and that JJCI cannot carry that burden simply by relying on the allegations in HLF's complaint, citing *Wexler v. United Airlines*, 496 F. Supp. 2d 150, 155–157 (D.D.C. 2007), for the proposition that "[the removing party] bears the burden of establishing jurisdiction, and facts necessary for a more precise estimate of the class size are uniquely within its knowledge." *See* Mot. at 13. This Court disagrees.

The defendant indeed bears the burden of showing that CAFA's requirements, including numerosity, are met. *See Breakman,* 545 F.Supp.2d at 100. But it does not follow that a

---

[1] HLF also argues that JJCI cannot carry its burden of establishing the amount in controversy by aggregating attorneys' fees. *See* Mot. at 16–17. However, since JJCI easily carries that burden by relying on statutory damages alone, the Court need not consider that question.

defendant may not rely on the plaintiff's allegations to do so. Such reliance comports with the general principle recognized in this Circuit that "factual allegations in operative pleadings are judicial admissions of fact." *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 876 (D.C. Cir. 2014). And for that reason, while the D.C. Circuit has not yet addressed the question, numerous circuits have held that a plaintiff is bound by allegations in a state-court complaint that go to CAFA's jurisdictional requirements. *See Roppo*, 869 F.3d at 575–82; *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 911 (10th Cir. 2016); *Judon v. Travelers Property Casualty Co. of Am.*, 773 F.3d 495, 505 (3d Cir. 2014); *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013); *Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 Fed. App'x 622, 625 (2d Cir. 2012); *Moffitt v. Residential Funding Co., LLC*, 604 F.3d 156, 158–59 (4th Cir. 2010). This Court agrees.

The Court recognizes that in so holding, it must necessarily break with *Wexler*, a case decided by another court in this District. But in the intervening years since *Wexler* was decided, the Supreme Court's decision in *Dart Cherokee* severely undermined its reasoning. The Supreme Court clarified in that case that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 89. *Wexler* relied on just such a presumption. In that case, the defendant relied on estimates of the amount in controversy and class size in the complaint, even though the defendant apparently could have looked to its figures to estimate those amounts. *Wexler*, 496 F. Supp. 2d at 155. The court reasoned that the defendant in that case could not simply rely on the plaintiff's allegations in the complaint because "the size of the class is very unclear," "the amount in controversy is uncertain, and ambiguities are to be resolved in favor of remand." *Id.* at 155–56. This Court declines to take that same approach, both because it respectfully disagrees

9

with *Wexler*'s disregard for the principle that plaintiffs are bound by their own factual allegations, and because a key assumption underlying *Wexler*'s reasoning was abrogated by *Dart Cherokee*.

Moreover, even if the Court were to rely on *Wexler*, that would only mean that reliance on the allegation that the putative class "consists of at least hundreds, if not thousands, of consumers[]" would not suffice if JJCI were aware of facts that could establish a more precise estimate of the putative class size. *Id*. But that principle is inapplicable here because JJCI has no such direct evidence, as previously explained. Rather, JJCI relies on the same wholesale figures it uses to establish the amount in controversy, based on a proportion of nationwide wholesale sales relative to the population of the District of Columbia compared with the population of the United States, which credibly suggest that there are more than 100 members in this putative class. Hurley Decl. ¶¶ 5, 10; Resp. 15. Use of those figures is equally reasonable in the context of class size.

Therefore, this Court concludes that the putative class size in this action meets the numerosity requirement of CAFA.

### IV.   CONCLUSION

For the reasons explained above, the Court will **DENY** HLF's motion to remand this case to Superior Court. A separate Order shall issue on this date.

Date: March 24, 2023

Royce C. Lamberth
United States District Judge